48 N.J. 214 (1966)
225 A.2d 105
VISIDOR CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BOROUGH OF CLIFFSIDE PARK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
The Supreme Court of New Jersey.
Argued September 27, 1966.
Decided November 21, 1966.
*215 Mr. Leon S. Wolk argued the cause for the appellant (Messrs. Basile & Delchop, attorneys).
Mr. Joseph N. Marotta, Jr. argued the cause for the respondent.
The opinion of the court was delivered by JACOBS, J.
The Appellate Division, in an opinion reported under the name of DeCarlo v. Cliffside Park, at 90 N.J. Super. 126 (1966), reversed the Law Division's dismissal of the damage claim of the plaintiff Visidor Corporation against the defendant Borough of Cliffside Park. 86 N.J. Super. 169 (1965). We granted certification on the Borough's application. 46 N.J. 539 (1966).
Visidor operates a tavern and restaurant in a building located on Palisade Avenue in Cliffside Park and leased from Dominick DeCarlo. The building is at the corner of Marion *216 Avenue and Palisade Avenue, directly opposite the Palisades Amusement Park. A parking lot in the rear of the building is used in connection with the tavern and restaurant and is accessible only from Marion Avenue. In March 1961 the Borough decided that Marion Avenue, along with Wayne Avenue and Franklin Avenue to the south thereof, should be made a one-way street. Directional signs were installed and as a result traffic could no longer enter Marion Avenue from Palisade Avenue. A motorist wishing to park in the rear would enter Wayne Avenue, then turn right on an undedicated strip of land, formerly a trolley car right of way, and then right again into Marion Avenue.
In March 1964 Visidor and DeCarlo filed a two-count complaint in lieu of prerogative writ. The first count alleged that the Borough's designation of Marion, Wayne and Franklin Avenues as one-way streets was illegal in that it was never authorized by an ordinance having the approval of the Division of Motor Vehicles as required by N.J.S.A. 39:4-197, N.J.S.A. 39:4-8 and N.J.S.A. 39:4-202. The relief sought under the first count was a declaration that the designation of the avenues as one-way streets was void and of no effect. The second count alleged that the illegal designation of Marion Avenue as a one-way street constituted a private nuisance which had caused financial loss to DeCarlo and to Visidor in that its business had been greatly reduced by virtue of the Borough's action. The relief sought under the second count was a judgment for money damages.
After the Borough admitted that no ordinance having departmental approval had ever been adopted, a motion for summary judgment was made as to the first count, and on April 17, 1964 a summary judgment was entered voiding the one-way designation. Thereupon the Borough removed the directional signs and the avenues were then conducted as two-way streets. In December 1964 the matter went to trial on the second count. DeCarlo acknowledged that he had suffered no damage and his claim was dismissed without any ensuing appeal. Visidor pressed the claim that it had suffered loss of *217 profits during 1961-64 in the aggregate sum of $15,000 but the trial court dismissed this claim as well. It held that the law would not recognize any such damage claim against the Borough on the basis of the illegal designation of the avenues as one-way streets. 86 N.J. Super., at p. 174. Visidor appealed the dismissal to the Appellate Division, which reversed in a brief per curiam embodying its view that Visidor's case came within the New Jersey precedents which hold that municipalities have no immunity from tort claims for damages resulting from their "active wrongdoing." 90 N.J. Super., at p. 127; see McAndrew v. Mularchuk, 33 N.J. 172, 181 (1960); Hayden v. Curley, 34 N.J. 420, 424 (1961).
In Mularchuk a municipal patrolman shot and wounded a young man who thereafter sued the municipality, alleging that it had negligently sanctioned the arming of the patrolman with a dangerous weapon without having adequately trained him in its use. In holding that there could be recovery, we pointed to the widespread attacks on sovereign immunity throughout the country and to the expanding applications within New Jersey of its doctrine that a municipality may be held accountable for injurious acts performed in its governmental capacity when they constitute active wrongdoing. 33 N.J., at pp. 181-182, 190-196. In the many jurisdictions which have gone even further than New Jersey in disavowing sovereign immunity, a municipality may be held accountable though its negligence is grounded on acts of omission, rather than on acts of commission which are subsumed in New Jersey under the terminology of active wrongdoing. Thus in Holytz v. City of Milwaukee, 17 Wis.2d 26, 115 N.W.2d 618 (1962), the Wisconsin Supreme Court, after referring to New Jersey's doctrine, pointed out that its own abrogation of municipal immunity would "apply broadly to torts, whether they be by commission or omission." 115 N.W.2d, at p. 625; see Prosser, Torts 1010-1013 (3d ed. 1964); 2 Harper and James, Torts 1619-1627 (1956); California Law Revision Commission, A Study Relating to Sovereign Immunity 260-266 (1963).
*218 Although the out-of-state cases abrogating municipal and other governmental immunity speak in very broad terms, they recognize that certain types of governmental activity must remain free from any resulting damage claims because they are properly viewed as nontortious or are otherwise deemed immune for controlling policy reasons. In Hargrove v. Town of Cocoa Beach, 96 So.2d 130, 133 (Fla. 1957), the Florida Supreme Court, in allowing an action against a city for wrongful death resulting from the negligence of a municipal police officer, abrogated prior holdings of municipal immunity, but in the course of its opinion took pains to point out that the abrogation would not "impose liability on the municipality in the exercise of legislative or judicial, or quasi-legislative or quasi-judicial, functions as illustrated in such cases as Elrod v. City of Daytona Beach, 132 Fla. 24, 180 So. 378, 118 A.L.R. 1049; and Akin v. City of Miami, Fla. 1963, 65 So.2d 54 [37 A.L.R.2d 691]." Elrod rejected a damage claim against a city grounded on its enforcement of an allegedly unconstitutional ordinance restricting house-to-house mercantile solicitation within the city limits; and Akin rejected a damage claim against the city based on its alleged illegal refusal to issue a building permit. See also Modlin v. Washington Avenue Food Center, 178 So.2d 596, 601 (Fla. D. Ct. App. 1965); Calbeck v. Town of South Pasadena, Florida, 128 So.2d 138, 139 (Fla. D. Ct. App. 1961); Annot., 37 A.L.R.2d 694 (1954); Annot., 118 A.L.R. 1054 (1939).
When the Kentucky Court of Appeals discarded municipal immunity in an action against a city for a child's death allegedly caused by the city's negligent operation of a swimming pool, it stated, as the Florida court had in Hargrove, that its opinion was not to be construed as imposing liability on a municipality for damages resulting from the exercise of its legislative functions. Haney v. City of Lexington, 386 S.W.2d 738, 742 (Ky. 1964). Similarly in Spanel v. Mounds View School District No. 621, 264 Minn. 279, 118 N.W.2d 795 (1962), the Minnesota Supreme Court, in prospectively *219 announcing that the rule of sovereign tort immunity would no longer be recognized as a defense with respect to claims against school districts, municipal corporations and other governmental subdivisions, noted that it did "not suggest that discretionary as distinguished from ministerial activities, or judicial, quasi-judicial, legislative or quasi-legislative functions may not continue to have the benefit of the rule." 118 N.W.2d, at p. 803. See also Muskopf v. Corning Hospital District, 55 Cal.2d 211, 11 Cal. Rptr. 89, 359 P.2d 457, 462 (1961); Lipman v. Brisbane Elementary School District, 55 Cal.2d 224, 11 Cal. Rptr. 97, 359 P.2d 465, 467 (1961); Holytz v. City of Milwaukee, supra, 115 N.W.2d, at p. 625.
When Congress provided for the wide allowance of tort claims against the government, it specifically excluded, inter alia, claims based on acts or omissions of governmental employees exercising due care "in the execution of a statute or regulation, whether or not such statute or regulation be valid," or based "upon the exercise or performance or the failure to exercise or perform a discretionary function or duty." 28 U.S.C.A. § 2680; see Harper and James, supra § 29.14; 3 Davis, Administrative Law § 25.08 (1958); Prosser, supra § 125, at p. 999. In Dupree v. United States, 247 F.2d 819 (3 Cir. 1957), the court applied this exclusion in support of its rejection of a damage claim based on the Coast Guard's allegedly wrongful refusal to issue security clearance to the plaintiff; in the course of his opinion, Judge Kalodner noted that the Federal Tort Claims Act did not contemplate "a remedy for damages sustained by reason of the application of invalid laws or regulations." 247 F.2d, at pp. 824-825.
Even in jurisdictions where legislative waivers of sovereign immunity have been adopted without stated exceptions, exclusions comparable to the cited one in the federal act have been read into the legislation. In Evangelical United Breth. Church of Adna v. State, Wash., 407 P.2d 440 (1965), the court rejected a claim against the state for damages from *220 arson committed by a boy who had escaped from a juvenile correctional facility where a so-called "open program" was being followed. Washington's comprehensive legislative waiver was held not to contemplate the allowance of such claims grounded on the alleged invalidity of official determinations as to how the facility should be run; those determinations were described as "purely discretionary if not quasi-judicial" in nature and as nontortious. 407 P.2d, at p. 447. New York's legislative waiver of immunity has been properly described as a sweeping one. See Herzog, "Liability of the State of New York for `Purely Governmental' Functions," 10 Syracuse L. Rev. 30 (1958). Nonetheless, its courts have refused to recognize liability for damages resulting, either from so-called discretionary determinations by municipal and other governmental officials, or from action taken pursuant to legislative enactment or administrative regulation. See Weiss v. Fote, 7 N.Y.2d 579, 200 N.Y.S.2d 409, 167 N.E.2d 63 (1960); Rottkamp v. Young, 21 A.D.2d 373, 249 N.Y.S.2d 330 (1964), affirmed 15 N.Y.2d 831, 257 N.Y.S.2d 944, 205 N.E.2d 866 (1965); Granger v. State of New York, 14 A.D.2d 645, 218 N.Y.S.2d 742 (1961); cf. Terrace Hotel Co. v. State, 46 Misc.2d 174, 259 N.Y.S.2d 553 (Ct. Cl. 1965), affirmed 26 A.D.2d 23, 270 N.Y.S.2d 460 (1966); see also Jaffe, "Suits Against Governments and Officers: Damage Actions," 77 Harv. L. Rev. 209, 237 (1963).
In our own State, recent decisions have made it plain that, even if we were to go further in our restriction of sovereign immunity, as some of us firmly believe we should (cf. City of East Orange v. Palmer, 47 N.J. 307, 328 (1966)), there would nevertheless remain the need for declaring nonliability for certain areas of official conduct, either as nontortious or as otherwise immune. Thus in Hoy v. Capelli, 48 N.J. 81 (1966), it was held that a municipality could not be found liable in damages because of its failure to reinstall a traffic light at the intersection where the accident later occurred; in the course of his opinion, Justice Hall referred to the so-called discretionary exception recognized elsewhere and *221 pointed out that, for policy reasons and regardless of the appropriate label or categorization, no damage claim could be grounded on the alleged invalidity of the governmental determination with respect to the installation or non-installation of the traffic device. 48 N.J., at pp. 87-91.
In Amelchenko v. Borough of Freehold, 42 N.J. 541 (1964), the municipality, confronted with the effects of a snowstorm, had done some clearing but had not as yet cleared its municipal parking lot when the plaintiff slipped there and injured himself. In holding that the plaintiff's claim for damages was properly dismissed, Justice Francis remarked that municipal determinations as to the amount of snow removal equipment to be purchased, and as to the number of men to be assigned to snow removal, were matters of judgment which should not be tested in tort actions. 42 N.J., at p. 549; see Fitzgerald v. Palmer, 47 N.J. 106, 110 (1966). He pointed out that the general method of handling snowstorms was a matter of planning entrusted to local officials who should be free to determine it "without fear of liability either for themselves or for the public entity they represent." 42 N.J., at p. 550. It may here appropriately be noted that the nonliability of individual public officials for damages ensuing upon their good faith exercise of judgment and discretion in the performance of their duties, has long been recognized in our State. See Bedrock Foundations, Inc. v. Geo. H. Brewster & Son, Inc., 31 N.J. 124, 140-145 (1959); Tyrell v. Burke, 110 N.J.L. 225 (E. & A. 1933); Valentine v. Englewood, 76 N.J.L. 509 (E. & A. 1908).
Municipalities have been vested with broad regulatory powers for the advancement of the public health, safety or welfare (R.S. 40:48-1 et seq.); these of course encompass customary traffic regulations including the designation of one-way streets. R.S. 39:4-197. If the Borough had proceeded through an approved ordinance designating Marion Avenue as a one-way street, there presumably would have been the economic business loss, but society could rightly expect that Visidor bear such loss without recourse. That much is *222 not disputed by Visidor. Cf. Tubular Service Corp. v. Com. State Highway Dept., 77 N.J. Super. 556 (App. Div.), affirmed 40 N.J. 331 (1963); see California Law Revision Commission, A Study Relating to Sovereign Immunity, supra, at pp. 434-437. It claims, however, that since here the Borough did not so proceed, the illegality of its action may in itself be deemed a sufficient basis on which to support the damage claim. If this approach were accepted, damages could be recovered from a municipality whenever there was a showing of harm resulting from municipal zoning, licensing or other restriction later declared invalid. The absence of any right to such damages has been generally assumed in our State. Though our law reports are full of proceedings for the setting aside of restrictive municipal ordinances and resolutions, none, so far as we know, has ever been accompanied or followed by any damage recovery. Elsewhere the courts have for policy reasons expressly denied such recovery with substantial consistency. See Rottkamp v. Young, supra, 249 N.Y.S.2d, at p. 335; McCray v. City of Lake Louisvilla, 332 S.W.2d 837, 842 (Ky. 1960); Fidelity Laboratories v. Oklahoma City, 191 Okla. 473, 130 P.2d 834, 836 (1942); Kramer v. City of Jefferson, 233 Mo. App. 685, 124 S.W.2d 525, 526 (1939); Lindeman v. City of Kenosha, 206 Wis. 364, 240 N.W. 373, 375 (1932); City of Chicago v. New York, C. & St. L.R. Co., 216 F. 725, 740 (7 Cir. 1914); Hershberg v. City of Barbourville, 142 Ky. 60, 133 S.W. 985, 986 (1911).
In his administrative law treatise, Professor Davis voiced current approval of the principles underlying the cited decisions; as he put it, "invalidity of governmental action, without more, clearly should not be a basis for liability for harm caused by the action." Davis, supra § 25.12; but cf. California Law Revision Commission, A Study Relating to Sovereign Immunity, supra, at pp. 437-438. Along the same line, the 1963 California statute explicitly provided that there would be no liability for action taken in good faith "under the apparent authority of an enactment that is unconstitutional, *223 invalid or inapplicable." Cal. Gov't. Code §§ 820.6, 815.2 (Deering Supp. 1965); Comment, California Tort Claims Act, 39 So. Cal. L. Rev. 470 (1966). Similarly the 1965 Illinois statute provided that good faith action under an invalid enactment is immune to the same extent it would be if the enactment had been valid. 85 Ill. Annot. Stat. §§ 2-203, 2-109 (Smith & Hurd 1966); Comment, Illinois Tort Claims Act, 61 Nw. U.L. Rev. 265 (1966).
Though Visidor's complaint here spoke in terms of nuisance, we are concerned with the operative facts rather than the label. Hartman v. City of Brigantine, 23 N.J. 530, 535 (1957). The Borough's action was presumably taken in good faith and with unawareness that it was defective. It was rescinded as soon as the trial court declared it to be invalid. Visidor's alleged business harm could have been substantially eliminated if it had proceeded in March 1961 upon the installation of the directional signs. Our court rules contain ample provision for summary application and for advancement of trial (R.R. 4:88; R.R. 4:58) and when, in March 1964, Visidor finally decided to bring legal action, it obtained summary relief during the very next month. Although the Borough's action was declared to have been procedurally illegal, the establishment of one-way streets was admittedly within the proper province of the Borough and the procedural requirement for a duly approved ordinance was clearly designed not for the protection of economic business interests but to advance the interests of safety and uniformity in traffic regulation. See Librizzi v. Plunkett, 126 N.J.L. 17, 20 (Sup. Ct. 1940); Eveler v. Atlantic City, 91 N.J.L. 135, 137 (Sup. Ct. 1918).
Here, as throughout the law, a balancing of the pertinent factors should be determinative. See Jaffe, supra, 77 Harv. L. Rev., at p. 219. On that approach we are satisfied that the Borough's action is fairly and justly to be viewed as nontortious or as otherwise immune and that the damage claim must consequently fail. This result is in full accord not only with the judicial precedents but also with the modern *224 legislative trends. It serves to protect municipalities against endangering financial demands and to permit their governing bodies to govern conscientiously for the public interest, as they find it, without the fears and burdens of litigating such demands. It does this while preserving very effective and expeditious remedies, perhaps more freely and broadly available in our State than in any other (Walker, Inc. v. Borough of Stanhope, 23 N.J. 657, 661 (1957)), for the setting aside of invalid official action.
Reversed.
For reversal  Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN  7.
For affirmance  None.