[Cite as *State ex rel. Miami Overlook, Inc. v. Germantown*, 2011-Ohio-3419.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE, ex rel., MIAMI OVERLOOK, INC. | : | |
| | : | Appellate Case No. 24017 |
| | : | |
| Plaintiff-Appellant | : | Trial Court Case No. 07-CV-9795 |
| | : | |
| v. | : | |
| | : | (Civil Appeal from |
| VILLAGE OF GERMANTOWN | : | Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 8th day of July, 2011.

. . . . . . . . . . .

ROBERT W. RETTICH, III, Atty. Reg. #0007092, 46 East Market Street, Germantown, Ohio 45327-1336
    Attorney for Plaintiff-Appellant

LYNNETTE DINKLER, Atty. Reg. #0065455, Dinkler Pregon, LLC, 2625 Commons Boulevard, Suite A, Dayton, Ohio 45431
    Attorney for Defendant-Appellee

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Plaintiff/relator-appellant Miami Overlook, Inc., appeals from a summary judgment rendered in favor of defendant/respondent-appellee Village of Germantown. Miami Overlook contends that the trial court erred in concluding that Miami Overlook failed to comply with the statute of limitations in R.C. 713.121. Miami Overlook further contends

that R.C. 713.121 is unconstitutional as applied. Finally, Miami Overlook contends that the trial court's decision deprives it of procedural due process rights found in Section 16, Article I of the Ohio Constitution.

{¶ 2} We conclude that the trial court did not err in rendering summary judgment in favor of Germantown. The trial court correctly concluded that claims regarding procedural irregularities in the ordinance are barred by Miami Overlook's failure to file suit within the statutory period outlined in R.C. 713.121. The mandamus claim, which seeks to compel Germantown to institute an appropriation proceeding, is also barred. Although the trial court erroneously applied the two-year statute of limitations prescribed in R.C. 2744.02, the correct, four-year statute of limitations prescribed in R.C. 2305.09(E) bars this claim. Accordingly, the judgment of the trial court is Affirmed

I

{¶ 3} In 1997, Miami Overlook, Inc., was formed to purchase a 16.5 acre parcel of property located at 270 W. Warren Street in Germantown, Ohio. The property, part of a parcel known as "Camp Miami," included a 50,000 square-foot structure that had been used as a military academy, a seminary, and a church camp. The shareholders of Miami Overlook are Kathy Rettich, Robert Rettich, George Kuhn, and Glenda Kuhn, and they intended to market the property to developers.

{¶ 4} At the time of purchase, the parcel was zoned R-3, or multi-family residential. In 1998, Kathy Rettich learned that Germantown was considering rezoning that would affect the property. Consequently, Rettich met with Chris Pozzuto, who was then Germantown's zoning compliance officer. Rettich specifically asked Pozzuto if the Camp Miami property

were going to be rezoned. Pozzuto told Rettich that the area where Camp Miami was located had been reviewed, and would remain zoned as R-3. Pozzuto also told Rettich that she would be notified if the property were going to be rezoned.

{¶ 5} Rettich's affidavit does not state exactly when in 1998 this conversation occurred. As early as July 1998, Pozzuto and the Germantown Village Council were working on changes to the Zoning Code.

{¶ 6} In February 1999, a new zoning code was introduced to the Village Council. The minutes of the meeting indicate that a representative of Choice One Engineering was present to discuss the proposed zoning code. Discussion of the proposed code continued at various Council meetings until May 1, 2000, when Ordinance 00-30 was introduced. The ordinance was titled: "An Ordinance to Repeal Part Eleven of the Codified Ordinances Known as the Planning and Zoning Code with the Exception of Chapter 1169 and to Adopt a Replacement Part Eleven Which Shall Hereafter be Known as the Zoning and Planning Code of the Municipality of Germantown." Affidavit of Anna Castro, DEF 91-92.

{¶ 7} Legal notice of the ordinance was published in the Germantown Press on May 4, 2000. The notice indicated that a public hearing would be held on June 5, but did not identify the time or location of the hearing. The ordinance was enacted on June 5, 2000.

{¶ 8} In 2004, a potential purchaser expressed interest in the Miami Overlook property, but declined to pursue the matter. When asked why he lost interest, the purchaser stated that the property was only zoned R-1, single family residential. Kathy Rettich then contacted the Village to ask when the zoning change had occurred. She also found the 2000 publication notice of the public hearing to replace the Zoning Ordinances. After discovering

that the property had been rezoned from R-3 to R-1 in the 2000 ordinance, Miami Overlook applied to have the property rezoned to R-3. A June 15, 2005 memorandum from Tiffany Warner, Clerk of Council/Zoning Officer indicated as follows:

{¶ 9} "The rezoning application states that they [Miami Overlook] would like to rezone the property 'so that zoning map conforms to continued use of R-3.' This property has been either vacant and/or used as a single family dwelling for quite some time. Therefore, there really is no continued use of R-3.

{¶ 10} "Based on the recommendations of the Joint Economic Development Plan and the existing use of the building, staff does not recommend that this property be rezoned at this time. When and if the property owner prepares a development plan for the property, the Village can then revisit this issue and possibly consider an R-3 PUD proposal." Id. at DEF-146.

{¶ 11} A public hearing was held by the Planning Commission on June 22, 2005. At that time, the Planning Commission voted 3-2 to recommend denial of the rezoning request. Id. at DEF-160. The Village Council subsequently held a public hearing on the rezoning request (Ordinance 05-54) on September 19, 2005, but the ordinance failed, 2-4.

{¶ 12} In October 2005, Miami Overlook filed an administrative appeal and complaint against Germantown. The complaint contained the following causes of action: (1) an improper taking of property without due process; (2) an administrative appeal of the denial of rezoning to R-3, pursuant to R.C. 2506.01; and (3) malicious deprivation of property. That action was dismissed without prejudice, and the action giving rise to this appeal was filed in November 2007, as a complaint for declaratory judgment and for writ of mandamus. Count I

alleged that the zoning ordinance was invalid, because Germantown failed to comply with R.C. 713.12. Count II alleged that enactment of the zoning ordinance rendered the property unfit for use, and Count III alleged that if the ordinance were not declared invalid, the rezoning constituted an appropriation of the property without due process. Miami Overlook, therefore, requested in Count III that the court issue a writ of mandamus compelling Germantown to begin appropriation proceedings under R.C. 713.19 and/or R.C. 163.05, based on the regulatory taking of all economically viable uses of the property.

{¶ 13} Germantown's answer raised various affirmative defenses, including failure to comply with the statute of limitations. Shortly after the complaint was filed, Miami Overlook filed a partial motion for summary judgment. Miami Overlook contended that summary judgment should be rendered in its favor on Count I, based on Germantown's failure to provide proper notice of the public hearing required by R.C. 713.12. Germantown also filed a motion for summary judgment, contending that Miami Overlook's claim under R.C. 713.12 was barred by the two-year statute of limitations in R.C. 713.121. Germantown also contended that the second and third counts asserted duplicate claims, and that mandamus relief was barred by the statute of limitations in R.C. 2305.07 and R.C. 2744.04.

{¶ 14} In June 2008, the trial court issued decisions overruling both motions for summary judgment, due to factual issues regarding whether Miami Overlook knew of the rezoning. Germantown then filed a motion for clarification, contending that the trial court had failed to address certain issues. The trial court sustained the motion for clarification and said it would reconsider motions for summary judgment, upon proper motion. Germantown promptly refiled the motion for summary judgment.

{¶ 15} Subsequently, the trial court issued a decision rendering summary judgment in favor of Germantown.   The court concluded that Counts I and III were barred, because Miami Overlook failed to comply with the statute of limitations under R.C. 2744.04 and R.C. 713.121.   The court additionally concluded that Count II was improper, because a private right of action, apart from mandamus, does not exist for plaintiffs alleging a regulatory taking.

{¶ 16} Miami Overlook appeals from the summary judgment rendered in favor of Germantown.

II

{¶ 17} Miami Overlook's First Assignment of Error is as follows:

{¶ 18} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE DEFENDANT/APPELLEE, VILLAGE OF GERMANTOWN."

{¶ 19} Under this assignment of error, Miami Overlook contends that the trial court erred in rendering summary judgment in favor of Germantown.   The court's decision was based on Miami Overlook's failure to file an action within two years after June 5, 2000, which is the date that Germantown enacted Ordinance 00-30, adopting the new Zoning Code.    The trial court applied two different statutes of limitation: (1) the two-year limitations period in R.C. 713.121, to the claim that Germantown failed to comply with procedural requirements in R.C. 713.12; and (2) the two-year limitations period in R.C. 2744.04, to the mandamus claim. We will consider these issues separately.

A.   Claims Based on R.C. 713.12

{¶ 20} "We review summary judgment decisions de novo, which means that we apply

the same standards as the trial court." *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, ¶16. Under these standards, trial courts "may grant a moving party summary judgment pursuant to Civ. R. 56 if there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor." *Smith v. Five Rivers MetroParks* (1999), 134 Ohio App.3d 754, 760.

{¶ 21} The facts in the case before us are essentially undisputed. Miami Overlook filed two actions. The first was filed in October 2005, more than five years after the zoning ordinance was enacted. That action was dismissed. The second action was filed in November 2007, as a declaratory judgment and mandamus action. In both actions, Miami Overlook alleged that Germantown failed to comply with R.C. 713.12, which states that:

{¶ 22} "Before any ordinance, measure, regulation, or amendments thereto, authorized by sections 713.07 to 713.11, inclusive, of the Revised Code, may be passed the legislative authority of the municipal corporation shall hold a public hearing thereon, and shall give at least thirty days' notice of the time and place thereof in a newspaper of general circulation in the municipal corporation."

{¶ 23} The materials submitted to the trial court reveal that Germantown did not comply with this statute. Germantown gave thirty days notice that a public hearing on the ordinance would take place on June 5, but the notice failed to state the time, place, or even the specific year of the hearing (although it could be assumed from the context of the publication notice that the hearing would be held in the year 2000). Therefore, the ordinance could have

been invalidated upon the filing of a timely action.

{¶ 24} In this regard, R.C. 713.121 provides that:

{¶ 25} "No action challenging the validity of a zoning ordinance or regulation or of any amendment to such an ordinance or regulation because of a procedural error in the adoption of the ordinance, regulation, or amendment shall be brought more than two years after the adoption of the ordinance, regulation, or amendment."

{¶ 26} Miami Overlook's claim for procedural irregularity is barred by this statute, because the claim was not filed within two years after the ordinance was adopted in June 2000. Miami Overlook contends, however, that we should apply a discovery rule, which would allow suit to be filed within two years after the time that Miami Overlook discovered the zoning change.

{¶ 27} As support for its assertion that a discovery rule should be applied, Miami Overlook relies on *Village of Wintersville v. Argo Sales Co., Inc.* (1973), 35 Ohio St.2d 148. In *Wintersville*, a village attempted to obtain a permanent injunction against the defendants' use of residentially zoned property for a commercial purpose, in violation of an ordinance that the village had enacted in 1957. Id. at 148-50. The Supreme Court of Ohio affirmed the denial of the injunction, concluding that the ordinance was ineffective and invalid, because the clerk of council failed to publish a thirty-day notice of the time and place of the hearing, as required by R.C. 713.12. Id. at 154.

{¶ 28} R.C. 713.121 was enacted in 1990, well after *Wintersville* was decided. *Wintersville* did not address any statute of limitations issues, and, therefore, did not discuss use of a discovery rule. The most that can be said is that the legislature decided at some later

point to impose a specific statute of limitations on claims of procedural irregularity.

{¶ 29} Miami Overlook also argues that the Eighth District Court of Appeals applied a discovery rule in *Martin v. Cleveland Bd. of Bldg. Std. & Bldg. Appeals*, Cuyahoga App. No. 86039, 2005-Ohio-6242. We disagree.

{¶ 30} In *Martin*, the plaintiff, Martin, was cited in July 2001 for violating certain ordinances of the City of Cleveland. During the administrative process, Martin contended that the City had failed to give proper notice when it initially adopted a 1996 ordinance that rezoned his district from general industry to residence-industry. Id. at ¶3. The Eighth District Court of Appeals rejected Martin's procedural due process challenge, noting that the claim was barred by the two-year statute of limitations in R.C. 713.121. Id. at ¶19. The court went on to make the following observation:

{¶ 31} "Even if Martin were to argue that the statute of limitations began to run when he received notice of the zoning change, Martin's previous administrative appeal to this court involving a citation for similar violations demonstrates that he had notice of the zoning change as early as December 1997. *Martin v. City of Cleveland* (Apr. 20, 2000), Cuyahoga App. No. 75405." 2005-Ohio-6242, ¶20.

{¶ 32} These observations are dicta, however, because the court of appeals had already concluded that Martin's action was barred by the statute of limitations. Consequently, the court did not need to consider the discovery issue. The court's own comments also indicate that Martin did not even raise the argument.

{¶ 33} As a further matter, our research has not disclosed cases where a "discovery rule" has been applied to R.C. 713.121. In fact, few cases actually refer to R.C. 713.121.

Where the statute has been considered, courts have applied the two-year statute of limitations as a bar, even where the party contesting the zoning application would not have owned the property when the zoning ordinance was passed, and would have had no reason to be aware of a published notice. See *Fifth Column v. Village of Valley View, Ohio* (N.D. Ohio, 1998), 100 F. Supp.2d 493, 507 (finding claim barred where owner purchased closed business and obtained occupancy permit approximately two and a half years after the ordinance was enacted. The owner filed suit shortly after obtaining the occupancy permit.); and *N&G Construction, Inc. v. City of Pataskala*, Licking App. No. 01CA00057, 2001-Ohio-1810 (plaintiff purchased property in 1999, and brought suit in 2000 regarding an ordinance passed in 1996. The court of appeals concluded that claims of procedural defects were barred by R.C. 713.121, but that the plaintiff could still proceed with substantive due process claims).

{¶ 34} The logic of allowing a limited time-frame for contesting procedural irregularities is clear. If a legislative body fails to follow procedural requirements, the failures are often technical oversights, as in the case before us. Germantown did publish notice of the hearing date, as required. Germantown also noted in the trial court that meetings of the Village Council are always held in the same place, so no confusion would have existed about that fact. A phone call could have elicited the time of the meeting – the records before the court indicate that council meetings typically begin at 7:00 p.m. In light of these technical irregularities, a reasonable time for bringing procedural challenges is appropriate; a potentially unlimited time-period is not.

{¶ 35} Accordingly, the trial court did not err in rendering summary judgment on the claims based on the ordinance's procedural invalidity under R.C. 713.12.

## B. Mandamus Claim

{¶ 36} The trial court also dismissed the mandamus claim, based on Miami Overlook's failure to comply with the two-year statute of limitations in R.C. 2744.04. Germantown raised both R.C. 2305.07 and R.C. 2744.04 in the trial court, but the trial court focused only on the latter statute.

{¶ 37} R.C. 2744.04 states that:

{¶ 38} "(A) An action against a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, whether brought as an original action, cross-claim, counterclaim, third-party claim, or claim for subrogation, shall be brought within two years after the cause of action accrues, or within any applicable shorter period of time for bringing the action provided by the Revised Code. The period of limitation contained in this division shall be tolled pursuant to section 2305.16 of the Revised Code. This division applies to actions brought against political subdivisions by all persons, governmental entities, and the state."

{¶ 39} At first blush, R.C. 2744.04 appears to provide a two-year statute of limitations for all claims against political subdivisions, because the statutory language is broad. But R.C. 2744.04 was enacted in 1985 as part of the Political Subdivision Tort Liability Act. *Adamsky v. Buckeye Local School Dist.*, 73 Ohio St.3d 360, 361, 1995-Ohio-298. Various reasons exist for rejecting the Act's application to actions in mandamus to require the respondent to institute appropriation proceedings.

{¶ 40} Previously, before the Political Subdivision Tort Liability Act was passed, the Supreme Court of Ohio distinguished between sovereign immunity as applied to torts and immunity as applied to legislative actions. *Superior Uptown, Inc. v. City of Cleveland* (1974), 39 Ohio St.2d 36. The court acknowledged in *Superior Uptown* that the sovereign immunity defense typically applies to tort claims. The court noted, however, that the sovereign immunity doctrine also applies to legislative actions. In this regard, the court stated that:

{¶ 41} "In fact, many states that have judicially or legislatively abolished the general defense of sovereign immunity recognize that immunity remains for a governmental body when it is acting in a legislative capacity. See *Visidor Corp. v. Borough of Cliffside Park* (1966), 48 N.J. 214, 225 A.2d 105, and cases cited therein. Those cases place sovereign immunity, as it applies to legislation, on a higher plane than sovereign immunity, as it applies to tort actions. The continuation of immunity for legislative acts is based upon a policy decision which favors the free exercise of legislative discretion over the remedying of economic harm suffered by individuals affected by legislation which is subsequently struck down." 39 Ohio St.2d at 40-41.

{¶ 42} Accordingly, the Supreme Court of Ohio concluded that municipal corporations are "not required to respond in damages for losses allegedly sustained by a property owner whose realty was subject to a rezoning ordinance which was subsequently declared invalid." Id. at 41. Consistent with this theory, the court reversed the award of damages to the property owner in *Superior Uptown*, while affirming the invalidation of a rezoning ordinance that affected the owner's property. Id.

{¶ 43} More than ten years later, the General Assembly passed the Political Subdivision Tort Liability Act, which "is codified in R.C. Chapter 2744 and was enacted in response to the judicial abolishment of the common-law doctrine of sovereign immunity for municipal corporations in *Haverlack v. Portage Homes, Inc*. (1982), 2 Ohio St.3d 26, 2 OBR 572, 442 N.E.2d 749, and *Enghauser Mfg. Co. v. Eriksson Eng. Ltd.* (1983), 6 Ohio St.3d 31, 6 OBR 53, 451 N.E.2d 228."   *Haynes v. Franklin*, 95 Ohio St.3d 344, 346, 2002-Ohio-2334, ¶9.    In *Enghauser*, the Supreme Court of Ohio indicated that its abrogation of sovereign immunity extended only to *torts*.   In this regard, the court commented that:

{¶ 44}  "This court's abrogation of municipal immunity does not mean that a municipal entity is liable for all harm that results from its activities; it is only to those harms which are torts that municipalities may now be held liable.   This decision merely subjects municipal entities to the same rules as private persons or corporations if a duty has been violated and a tort has been committed.

{¶ 45} " * * * *

{¶ 46} "Most importantly, this decision should not be interpreted as abolishing immunity to those certain acts which go to the essence of governing. * * * This court does not contemplate that the essential acts of governmental decision-making be the subject of judicial second-guessing or harassment by the actual or potential threat of litigation."   6 Ohio St.3d at 35 (citations omitted).

{¶ 47} Thus, the decisions abolishing immunity did not apply to the type of situation involved in *Superior Uptown*, and the legislature did not need to restore legislative immunity when it enacted the Political Subdivision Tort Liability Act.

**{¶ 48}** Furthermore, we have specifically concluded that the property rights secured by the Fifth Amendment of the United States Constitution and Article I, Section 19 of the Ohio Constitution are not subject to the limitations of the Political Subdivision Tort Liability Act. See *Denune v. City Of Springfield*, Clark App. No. 01CA0097, 2002-Ohio-3287. In *Denune*, we stated that:

**{¶ 49}** "Finally, Plaintiffs alleged a taking of their property by the City without just compensation. While this was alleged to be 'wrongful,' in the sense of a tort, the claim invokes the protections of the Fifth Amendment to the United States Constitution and Article I, Section 19, of the Ohio Constitution. The rights which those provisions confer are not subject to the limitations of the Political Subdivision Tort Liability Act.

**{¶ 50}** "Plaintiffs' claim, in essence, creates an action for inverse condemnation, not one for money damages to which the Political Subdivision Tort Liability Act applies." Id.

**{¶ 51}** The Sixth District Court of Appeals recently agreed with our conclusion. See *Seiler v. City of Norwalk*, Huron App. No. H-10-008, 2011-Ohio-548, ¶41. See. also, *State ex rel. Post v. Speck*, Mercer App. No. 10-2006-001, 2006-Ohio-6339, ¶56 (noting that an appropriation action is not a tort action).

**{¶ 52}** These cases are consistent with the decision of the Supreme Court of Ohio in *State ex rel. Shemo v. Mayfield Hts.*, 96 Ohio St.3d 379, 2002-Ohio-4905, which distinguished between appropriation actions and actions for damages against political subdivisions. In *Shemo*, the City of Mayfield Heights asked the Supreme Court of Ohio to reconsider its decision, which held that property owners had established a compensable taking of their property. Id. at ¶1. The City argued, among other things, that the decision had effectively

overruled the court's prior decision in *Superior Uptown.* Id. at ¶6. The Supreme Court of Ohio disagreed, stating as follows:

**{¶ 53}** "Respondents raise three claims in support of reconsideration. In their first claim, they assert that *Shemo* sub silentio overruled established Ohio law, i.e., *Superior Uptown, Inc. v. Cleveland* (1974), 39 Ohio St.2d 36, 68 O.O.2d 21, 313 N.E.2d 820. In *Superior Uptown*, at the syllabus, we held, 'A cause of action for money damages can not be maintained against a municipality for losses sustained as the result of the adoption of a rezoning ordinance which is subsequently declared invalid.'

**{¶ 54}** "Respondents' claim lacks merit. *Shemo* does not overrule *Superior Uptown*. *Superior Uptown* involved a direct action for money damages against a municipality and was based upon the doctrine of sovereign immunity. By contrast, this case involves a mandamus claim to compel public authorities to institute appropriation proceedings where an involuntary taking of private property was alleged and ultimately proven by relators." Id. at ¶7.

**{¶ 55}** In *Shemo*, the Supreme Court of Ohio did mention that the City had waived an argument regarding the R.C. 2744.04 statute of limitations by failing to raise the issue in its pleadings. Id. at ¶25. However, the reconsideration decision was issued per curiam, and the court did not decide that R.C. 2744.04 actually applied; it simply rejected consideration of the matter, based on the city's failure to assert the affirmative defense. The court also did not discuss the content of the statute of limitations argument, but merely mentioned the issue in passing.

**{¶ 56}** More importantly, however, a few months after *Shemo*, the Supreme Court of Ohio held that the six-year statute of limitations in R.C. 2305.07 applies to mandamus actions

to compel the state to begin appropriation proceedings. See *State ex rel. R.T.G., Inc. v. State*, 98 Ohio St.3d 1, 6-7, 2002-Ohio-6716, ¶31. In *R.T.G.*, the Supreme Court of Ohio rejected the court of appeals' conclusion that the limitations period in R.C. 2305.09(D) applies to appropriation actions. Id. at ¶30. The Supreme Court of Ohio acknowledged that R.C. 2305.09(D) provides a statute of limitations for injuries " 'not arising on contract nor enumerated in sections 2305.10 to 2305.12 [,] 2305.14 and 1304.35 of the Revised Code.' " The court observed, however, that:

{¶ 57} "While none of the limitations listed in R.C. Chapter 2305 is a perfect fit for an action to compel appropriation proceedings, we find that the most appropriate statute of limitations is set out in R.C. 2305.07. It provides that 'an action upon a contract not in writing, express or implied, or upon a liability created by statute * * * shall be brought within six years after the cause thereof accrued.' (Emphasis added.) R.C. 2305.07.

{¶ 58} "A contract implied in fact is 'a contract that the parties presumably intended, either by tacit understanding or by the assumption that it existed.' Black's Law Dictionary (7th Ed.1999) 322. In an appropriation action, although the amount may be in dispute, when the state takes property, it is impliedly contracting that it will pay the property owner just compensation. See, *e.g.*, *Yearsley v. W.A. Ross Constr. Co.* (1940), 309 U.S. 18, 21, 60 S.Ct. 413, 84 L.Ed. 554 (if a regulation is determined to be a taking, the government has impliedly promised to pay compensation). Accordingly, we hold that the statute of limitations applicable to a mandamus action to compel the state to begin appropriation proceedings is the six-year limitation set out in R.C. 2305.07." Id. at ¶30-31.

{¶ 59} Based on *R.T.G.*, the statue of limitations for bringing appropriation claims

during the time that Miami Overlook's claim arose, was six years.

{¶ 60} R.C. 2744.04 was not amended after *R.T.G.* was issued, and there is no reason to believe that the General Assembly or the Supreme Court of Ohio would apply the limitations period in R.C. 2744.04 to appropriation actions.[1] The legislature did amend R.C. 2305.09, effective May 31, 2004, to insert new subdivision (E). The amended statute states as follows:

{¶ 61} "Except as provided for in division (C) of this section, an action for any of the following causes shall be brought within four years after the cause thereof accrued:

{¶ 62} " * * * *

{¶ 63} "(E) For relief on the grounds of a physical or regulatory taking of real property."

{¶ 64} The 2004 amendment lessened the applicable statute of limitations from six years to four years. " '[A] period of limitations already running may also be shortened by the legislature' as long as 'a period sufficiently long to allow a reasonable time to begin suit' is allowed. See generally 1A Sackman, Nichols on Eminent Domain (3d Ed.2006) 4-74, Section 4.102[3] (recognizing this rule in takings cases) * * * ." *State ex rel. Nickoli v. Erie MetroParks,* 124 Ohio St.3d 449, 455, 2010-Ohio-606, ¶29.

{¶ 65} Germantown's ordinance was enacted on June 5, 2000. Under the then-existing six-year statute of limitations, Miami Overlook had until June 5, 2006, to file suit. Under the amended statute, however, the applicable statute of limitations would expire

---

[1] R.C. 2744.04 was amended on December 4, 2002, about two weeks before *R.T.G.* was decided. The amendment took effect in April 2003, and does not bear upon issues relating to this case.

on June 5, 2004, less than a week after R.C. 2305.09(E) became effective.

{¶ 66} In *Smith v. New York Central RR. Co.* (1930), 122 Ohio St. 45, the Ohio Supreme Court dealt with the effect of shortening the statute of limitations for bringing personal injury actions from four years to two years. The statutory change had no internal effective date and had not been declared an emergency, so it was effective 90 days after being filed by the Governor with the Secretary of State. Ohio Constitution Article II, Section1(c). The *Smith* court determined that it was unable to find that the 90-day period, from passage to effective date, was unreasonable. Therefore, the new limitation was applicable to existing, but previously unfiled claims.

{¶ 67} In the case before us, R.C. 2305.09 (E) was part of Amended Sub. H.B. 161, passed on February 4, 2004. The bill became law upon approval March 2, 2004. The act was declared to be an emergency, which would make it effective immediately, with the following specific exception: "SECTION 6. Sections 2305.09 and 2305.19 of the Revised Code shall take effect ninety days after the effective date of this act." Ninety days later was May 31, 2004, which became the effective date of R.C. 2305.09 (E), the provision for a four-year statute of limitations, shorter than the six-year statute of limitations that had been applicable to a cause of action based on the taking of real property. Under *Smith v. New York Central RR. Co.*, supra, the delayed effective date of these two statute-of-limitation provisions allowed a reasonable time for the initiation of actions with respect to which the statute of limitations was running, but had not yet expired.

{¶ 68} Thus, Miami Overlook's cause of action in mandamus to compel Germantown to commence an appropriation action became time-barred on May 31, 2004. Even if the

re-filed action could properly be deemed to have related back to the original action Miami Overlook filed in October, 2005, it was time-barred.

{¶ 69} Although the trial court erred in applying a two-year statute of limitations, that error is harmless, since Miami Overlook's takings claim was barred by the applicable four-year statute of limitations.

{¶ 70} Miami Overlook's First Assignment of Error is overruled.


III

{¶ 71} Miami Overlook's Second Assignment of Error is as follows:

{¶ 72} "THE TRIAL COURT'S DECISION IS UNCONSTITUTIONAL."

{¶ 73} Under this assignment of error, Miami Overlook contends that R.C. 713.12 is unconstitutional, because the statute of limitations would have expired before Miami Overlook discovered its claim.   According to Miami Overlook, this infringes upon Article I, Section 16 of the Ohio Constitution.

{¶ 74} Article I, Section 16 of the Ohio Constitution states that:

{¶ 75} "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay. Suits may be brought against the state, in such courts and in such manner, as may be provided by law."

{¶ 76} The Supreme Court of Ohio recently rejected a constitutional challenge under Article 1, Section 16, to a statute limiting the time within which an action could be brought in situations of repressed memories of sexual abuse.  *Pratte v. Stewart*, 125 Ohio St.3d 473,

481, 2010-Ohio-1860. In doing so, the court stressed that:

{¶ 77} " 'Any constitutional analysis must begin with the presumption of constitutionality enjoyed by all legislation, and the understanding that it is not this court's duty to assess the wisdom of a particular statute.' *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶141. In *Groch*, this court reaffirmed the principles set forth in *Sedar v. Knowlton Constr. Co.* (1990), 49 Ohio St.3d 193, 199, 551 N.E.2d 938, that the right-to-a-remedy provision of Section 16, Article I applies only to existing, vested rights, and it is state law that determines what injuries are recognized and what remedies are available." 2010-Ohio-1860, ¶40.

{¶ 78} In *Pratte*, the plaintiff argued that the statute of limitations unfairly deprived her of a remedy before she became aware of her repressed memories, and knew she had a claim. This is the same argument that Miami Overlook makes. The Supreme Court of Ohio rejected that reasoning, stating that if the plaintiff's view prevailed:

{¶ 79} "any statute of limitations that does not afford explicit discovery tolling provisions would violate the right-to-a-remedy provision, irrespective of whether it is applied retroactively or prospectively. Furthermore, the adoption of Pratte's position would discount the axiom that statutes of limitation serve a gate-keeping function for courts by '(1) ensuring fairness to the defendant, (2) encouraging prompt prosecution of causes of action, (3) suppressing stale and fraudulent claims, and (4) avoiding the inconveniences engendered by delay-specifically, the difficulties of proof present in older cases.' * * * Justice is not served in such cases." Id. at ¶42 (citation omitted).

{¶ 80} The limitations period in R.C. 713.121 serves these functions. Allowing a

discovery rule could permit procedural challenges to ordinances for an unlimited time, which would cause obvious problems with proof and would permit stale claims. Moreover, applying the limitations period in R.C. 713.121 does not deprive Miami Overlook of *any* potential remedy. Although it precludes Miami Overlook from challenging the ordinance on procedural grounds, Miami Overlook had other remedies, including administrative appeal of the denial of rezoning, a declaratory judgment action asserting that the ordinance was unconstitutional as applied, or a mandamus action, requesting that the Village be compelled to institute appropriation proceedings. See, *e.g.*, *State ex rel. Ridge Club v. Amberley Village*, Hamilton App. No. C-070012, 2007-Ohio-6089 (asserting the latter two claims).

{¶ 81} Accordingly, Miami Overlook's Second Assignment of Error is Overruled.

IV

{¶ 82} Miami Overlook's Third Assignment of Error is as follows:

{¶ 83} "THE TRIAL COURT'S DECISION WRONGFULLY DEPRIVES THE APPELLANT OF PROPERTY."

{¶ 84} Under this assignment of error, Miami Overlook contends that the trial court's decision deprived it of the ability to be heard on the rezoning. Germantown responds by contending that the trial court found the merits of the case to be moot, based on the statute of limitations. We agree with Germantown. Miami Overlook's causes of action are barred by applicable statutes of limitation.

{¶ 85} Miami Overlook's Third Assignment of Error is overruled.

V

{¶ 86} All of Miami Overlook's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

HALL and KLINE, JJ., concur.

(Hon. Roger L. Kline, Fourth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Robert W. Rettich, III
Lynnette Dinkler
Hon. Frances E. McGee