**MADORSKY, Appellant,**

v.

**BERNSTEIN, Appellee.**

[Cite as *Madorsky v. Bernstein* (1993), 89 Ohio App.3d 550.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 63048.

Decided July 26, 1993.

*Larry I. Madorsky, pro se.*

*Dworken & Bernstein, Alec Berezin* and *Patrick J. Perotti,* for appellee.

---

PATRICIA A. BLACKMON, Judge.

This is an appeal from a judgment of the Cuyahoga County Court of Common Pleas in favor of Howard W. Bernstein, defendant-appellee, against Larry I. Madorsky, plaintiff-appellant. Madorsky assigns one error, challenging the judgment of the trial court:

"The trial court erred in granting defendant's motion for summary judgment."

Having reviewed the record and arguments presented, we affirm the decision of the trial court. The apposite facts follow.

On December 22, 1987, Madorsky, an attorney licensed to practice in the state of Ohio, was retained by Linda Gambill, n.k.a. Linda Pike, to represent her in a divorce action in Lake County. Gambill provided Madorsky with a retainer of $7,500. Madorsky, who primarily practices in Cuyahoga County, acquired the services of Bernstein as local co-counsel in Lake County.

With the consent of Gambill, Madorsky and Bernstein entered into a co-counsel agreement. Under the terms of the agreement, they would share the work in equal amounts of $3,750 up to the amount of the $7,500 retainer, and after those funds were exhausted they would each bill their client at a rate of $150 per hour. They further agreed that when one of them bills their client, the other co-counsel will be entitled to one third of the fees billed.

As a part of the agreement, Madorsky provided Bernstein with $2,500 of the initial retainer, kept $2,500 for himself, and held $2,500 for the hiring of additional counsel.

In a letter dated March 31, 1988, Bernstein informed Madorsky that they could no longer work jointly on the Gambill case, because of a disagreement they had on another case in which they served as co-counsel. Bernstein also informed Madorsky that he discussed the matter with Gambill, who expressed an interest to continue with Bernstein as primary counsel. Bernstein explained to Gambill that it would not be possible for him to serve as co-counsel with Madorsky, and she would have to make a choice.

Gambill testified, in deposition, that after the meeting with Bernstein she was left to make up her own mind. She explained that Madorsky's visit to her farm was a major factor in her decision not to continue with his service.

Sometime after the meeting, Madorsky came to visit her farm with his wife and child. While his wife and child were outside, Madorsky tried to convince her to

allow him to continue to represent her. She felt that it was unethical for an attorney to use tactics involving his family to conduct business. As a result, she chose Bernstein, because he communicated with her in a more ethical manner. Thereafter, Bernstein informed Madorsky of Gambill's choice.

Madorsky testified in deposition that at the time he was discharged by Bernstein on behalf of Gambill, he had performed approximately one third of the $3,750 initial services he was to have performed under the agreement with Bernstein. Bernstein billed Gambill $32,492.50.

Madorsky's amended complaint for tortious interference with contract and breach of contract sought one third of all fees billed by Bernstein in the Gambill case and in other cases in which they served as co-counsel, loss of legal fees, and punitive damages. After discovery was completed, the trial court granted summary judgment on Bernstein's motion. Madorsky timely appealed.

On appeal, Madorsky raises essentially two issues: whether there is a cognizable cause of action for tortious interference with a contract for legal services and whether there exists a genuine issue of material fact as to whether Bernstein tortiously interfered with Madorsky's attorney-client relationship with Gambill.

Bernstein argued, in support of summary judgment, that the attorney-client relationship, under *Fox & Assoc. Co., L.P.A. v. Purdon* (1989), 44 Ohio St.3d 69, 541 N.E.2d 448, is tantamount to an at-will agreement and, therefore, the relationship cannot form the basis for a cognizable action for tortious interference. We disagree.

The Ohio Supreme Court held that where an attorney is discharged by a client, the attorney is only entitled to recover the reasonable value of services rendered prior to discharge on the basis of *quantum meruit*. *Fox* at 72, 541 N.E.2d at 450. Notwithstanding the nature of the attorney client relationship, this court has recognized that an at-will employment agreement may form the basis for a cause of action for tortious interference. *Smith v. Klein* (1985), 23 Ohio App.3d 146, 23 OBR 387, 492 N.E.2d 852. The *Fox* opinion only limits law firms to "the maximum reach of its right to fees, with regard to the client." See *Fox*, 44 Ohio St.3d at 72, 541 N.E.2d at 450. There is nothing in the Supreme Court's ruling to suggest that discharge of an attorney bars a claim for tortious interference. Thus, as a matter of law, we find that the discharge of an attorney by his client may form the basis for a cognizable cause of action for tortious interference.

Madorsky argues that there was a genuine issue of material fact as to whether Bernstein had tortiously interfered with the attorney-client relationship between Madorsky and Gambill, which precluded summary judgment.

Civ.R. 56(C), in pertinent part, provides that:

"A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.   * * * "

The Supreme Court of Ohio further adopted the view: "A motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial." *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus, citing *Celotex v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265.

"The tort of 'business interference' occurs when a person, without a privilege, induces or otherwise purposely causes a third party not to enter into, or continue, a business relationship, or perform a contract with another.

"In order to determine the existence of a privilege the finder of facts must consider: (a) the nature of the actor's conduct;  (b) the nature of the expectancy with which his conduct interferes;  (c) the relation between the parties;  (d) the interest sought to be advanced by the actor;  and (e) the social interests in protecting the expectancy on the one hand and the actor's freedom of action on the other hand." *Juhasz v. Quik Shops, Inc.* (1977), 55 Ohio App.2d 51, 9 O.O.3d 216, 379 N.E.2d 235, at paragraphs two and three of the syllabus.  See, also, Restatement of Torts (1939) 63, Section 766.

" 'One is privileged purposely to cause another not to perform a contract, or enter into or continue a business relation, with a third person by in good faith asserting or threatening to protect properly a legally protected interest of his own which he believes may otherwise be impaired or destroyed by the performance of the contract or transaction.' " *Id.* at 57, 9 O.O.3d at 219–220, 379 N.E.2d at 239, quoting 4 Restatement of Torts (1939) 63, Section 773.

In this case, reasonable minds could construe Bernstein's forcing Gambill to make a choice between co-counsel as interfering with her attorney-client relationship with Madorsky.  As a result of Bernstein's interference, Gambill chose Bernstein as counsel to the exclusion of Madorsky.  Thus, the only question remaining for this court to decide is whether Bernstein's interference was privileged.

Madorsky argues that this action was taken in bad faith.  Bad faith cannot be predicated upon simply characterizing conduct as malicious.  See *Dawson v. Lamson & Sessions Co.* (Aug. 15, 1991), Cuyahoga App. No. 58997, unreported, at 14.  Summary judgment required that Madorsky produce evidence that Bernstein did not have a good-faith belief that his interest in Madorsky's client would

be jeopardized. See *Wing, supra.* Madorsky averred that Bernstein was malicious, but failed to present evidence that Bernstein acted in bad faith.

Madorsky's argument is also premised on the belief that he possessed the only attorney-client relationship. Bernstein was privileged by virtue of his own attorney-client relationship with Gambill. See *Juhasz,* 55 Ohio App.2d at 58, 9 O.O.3d at 220, 379 N.E.2d at 239. Under his agreement with Madorsky, Bernstein met directly with the client and billed the client, which created an attorney-client relationship between Bernstein and Gambill. "The overriding consideration in the attorney-client relationship is trust and confidence between the client and his or her attorney." *Fox,* 44 Ohio St.3d at 71, 541 N.E.2d at 450. Consequently, Bernstein had a privilege to disclose to his client that he could no longer work with co-counsel. Accord *Sonkin & Melena Co., L.P.A. v. Zaransky* (1992), 83 Ohio App.3d 169, 182, 614 N.E.2d 807, 816. The decision to choose was then left with the client.

Construing the evidence in the light most favorable to Madorsky, reasonable minds could only reach the conclusion that Bernstein had a privilege to interfere with his client's relationship with co-counsel. Accordingly, summary judgment was properly granted to Bernstein.

*Judgment affirmed.*

NAHRA, P.J., and HARPER, J., concur.