OPINION
{¶ 1} Christopher Altier ("Altier") appeals the June 10, 2003 judgment entry of the Geauga County Court of Common Pleas granting summary judgment in favor of Jacqueline Valentic and J.A. Valentic Company, Inc. (together "Valentic"). Altier also appeals the April 10, 2003 judgment entry dismissing Bond Seymour Company, L.P.A. and Daniel Bond (together "Bond") from the action. For the reasons set forth below, we affirm the decision of the trial court in this matter.
 {¶ 2} Altier, an attorney, and Valentic, a certified public accountant, provided professional services to Lois McNish ("McNish"), with Altier handling McNish's estate planning while Valentic provided accounting services to McNish, as well as being named McNish's power of attorney. As part of her estate planning, McNish executed a will, bequesting a majority of her estate to various members of her family.
 {¶ 3} On February 3, 2000, Valentic and Stanley Davis ("Davis"), McNish's nephew, filed an application in the Geauga County Court of Common Pleas to have Valentic appointed as guardian of McNish. McNish's family hired Bond to initiate the guardianship proceedings. An investigation ensued into the necessity for such an appointment. The investigator concluded that no appointment was necessary and that the power of attorney in place at the time was sufficient. Thereafter, the application was withdrawn. A subsequent application for appointment of co-guardians was filed in the Ashtabula Court of Common Pleas on February 28, 2000.
 {¶ 4} At some point, McNish retained the services of an investor, Michael Fedler ("Fedler"). Fedler helped McNish establish an investment account that named Altier, Valentic, and Fedler's wife as beneficiaries. The account totaled, in excess, of $600,000.00. Both Altier and Valentic claim that they expressed reservations to McNish about being named beneficiaries because of the inherent conflicts involved. Valentic requested to be removed as beneficiary in February 2000. McNish eventually changed the beneficiary to Hiram College, with the change in beneficiary form dated February 23, 2000.[1] Early in the morning on that same day, McNish was hospitalized with acute pancreatitis.
 {¶ 5} On March 3, 2000, because of reservations over the initial naming of beneficiaries, as well as the change in beneficiary, Valentic, exercising her authority under the power of attorney, transferred the assets invested with Fedler to a neutral account, naming the estate as the beneficiary. On March 5, 2002, McNish died.
 {¶ 6} Although Fedler was named the executrix of McNish's estate in her will, he eventually withdrew as such. Charles Lafferty ("Lafferty") was subsequently appointed as administrator of the estate. On June 7, 2000, Bond sent Lafferty a letter expressing his clients' concern with possible undue influence asserted on McNish by Altier and Fedler stemming from McNish's initial beneficiary declaration and from the circumstances surrounding the change in beneficiary.
 {¶ 7} In May 2000, Valentic met with Miland Childs ("Childs"), Valentic's client for 30 years. When Childs expressed an interest in hiring Altier to handle his estate, Valentic suggested that he not use Altier and that Valentic personally would not use Altier. When asked to expound, Valentic refused.
 {¶ 8} In August 2000, Hiram filed suit against Valentic for liquidating the assets in which Hiram was named beneficiary. The suit was eventually settled. Sometime thereafter, Valentic met with Mae Rubenstein ("Rubenstein"), Valentic's client and personal friend for 50 years. After Rubenstein informed Valentic that she hired Altier to handle her estate, Valentic told Rubenstein about the lawsuit initiated by Hiram. Valentic further informed Rubenstein that she would not work with Altier.
 {¶ 9} On April 1, 2002, Altier filed suit in the Trumbull County Court of Common Pleas. In July 2002, venue was transferred to the Ashtabula County Court of Common Pleas. The complaint was subsequently dismissed without prejudice.
 {¶ 10} On January 13, 2003, Altier re-filed the suit in the Geauga County Court of Common Pleas. Count one alleged that Valentic defamed Altier in his professional capacity; count two alleged tortious interference with business relations against Valentic; count three alleged defamation on the part of Bond; count four alleged Bond committed attorney malpractice; count five alleged negligent misrepresentation on Bond's part.
 {¶ 11} On March 10, 2003, before filing an answer to the complaint, Bond filed a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim as to counts three, four, and five. On March 24, 2003, Altier filed a motion to convert Bond's motion into a motion for summary judgment. On that same day, Altier filed a motion to amend his complaint to include a copy of the letter Bond sent to Lafferty. On April 10, 2003, the trial court granted Bond's motion to dismiss counts three, four, and five. Since there were no other claims against Bond, the trial court dismissed Bond as a party to the suit.
 {¶ 12} On April 30, 2003, Valentic filed a motion for summary judgment. On June 10, 2003, the trial court granted Valentic's motion. Altier timely appealed these decisions and raises the following assignments of error:
 {¶ 13} "[1.] The trial court erred in granting defendant Valentic's motion for summary judgment.
 {¶ 14} "[2.] The trial court erred in failing to convert defendant Bond's motion to dismiss to a motion for summary judgment.
 {¶ 15} "[3.] The trial court erred in granting defendant Bond's motion to dismiss."
 {¶ 16} In his first assignment of error, Altier argues that the record indicates that Valentic purposely, intentionally and improperly interfered with Altier's business relationships with Childs and Rubenstein. Thus, Altier claims that there remains a genuine issue of material fact regarding this claim.[2]
 {¶ 17} Summary judgment is appropriate when there is "no genuine issue as to any material fact [and] * * * reasonable minds can come to but one conclusion," which is adverse to the nonmoving party. Civ. R. 56(C). In reviewing a motion for summary judgment, the court must construe the evidence in favor of the nonmoving party. Id. Moreover, an appellate court conducts a de novo review of the trial court's decision to grant summary judgment. Doe v. Shaffer, 90 Ohio St.3d 388, 390,2000-Ohio-186.
 {¶ 18} "The tort of interference with business relationships * * * generally occur[s] when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another." A B-Abell Elevator Co., Inc. v. Columbus/CentralOhio Bldg. Constr. Trades Council, 73 Ohio St.3d 1, 14,1995-Ohio-66 (citations omitted); see, also, Doyle v. FairfieldMachine Co., Inc. (1997), 120 Ohio App.3d 192, 217 (citation omitted). Merely communicating a good faith opinion to another person does not rise to the level of tortious interference. SeeShaheen v. Canton Psychiatric Clinic Inc. (Feb. 13, 1995), 5th Dist. No. 1994 CA 00276, 1995 Ohio App. LEXIS 1400, at *6-*7.
 {¶ 19} In this case, in regards to her communication with Childs, Valentic merely opined that she would not recommend that Altier be retained to handle Childs' estate. Based upon the facts as she knew them at the time, it is clear that Valentic had a good faith belief that Altier's actions in the McNish matter may not have been aboveboard. Thus, in regards to Valentic's communications with Childs, we find that Altier could not clearly and convincingly establish that Valentic's communications rose to the level of tortious interference and, therefore, summary judgment was appropriate. See id. (finding the trial court's granting of summary judgment was appropriate where the claimed actionable communication was the defendant's opinion).
 {¶ 20} Regarding her communications with Rubenstein, Valentic stated that she would not work with Altier and, thus, gave Rubenstein the choice to continue his relationship with Valentic or begin one with Altier. Forcing a client to choose between two parties, arguably may be construed as interfering with another's business relationship, unless the communication was privileged. See, e.g., Madorsky v. Bernstein (1993), 89 Ohio App.3d 550,553-554 (citation omitted) (although "reasonable minds could construe [the defendant's] forcing [his client] to make a choice between [the parties] as interfering with [the client's] attorney-client relationship with [the plaintiff]," the defendant "had a privilege to disclose to his client that he could no longer work with [the plaintiff]").
 {¶ 21} "A communication made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter, which, without this privilege, would be actionable, and although the duty is not a legal one, but only a moral or social duty of imperfect obligation. The essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only." Hahn v. Kotten (1975), 43 Ohio St.2d 237, 246
(citations omitted). "In determining whether an occasion is privileged, however, we are not concerned with the motive of a particular defendant." A B-Abell, 73 Ohio St.3d at 10
(citation omitted).
 {¶ 22} "[I]n Ohio a qualified privilege can be defeated only by a clear and convincing showing that the communication was made with actual malice." Id. at 11 (citation omitted). "`[A]ctual malice' is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." Jacobs v. Frank (1991), 60 Ohio St.3d 111, paragraph two of the syllabus.
 {¶ 23} In this case, as discussed above, Valentic had a good faith belief that Altier's actions in the McNish matter may not have been appropriate. It is also evident that, based upon her long-term relationship as accountant with Rubenstein, Valentic had an interest or a duty to uphold in informing Rubenstein of her good faith belief. Further, her statements to Rubenstein were very limited in scope. Valentic's expressions were also made upon the proper occasion and in a proper manner, i.e. only in response to statements by Rubenstein regarding her potential employment of Altier as counsel, limited to a general refusal to continue her relationship if Altier were so hired, and limited to communications directly to Rubenstein. In fact, Valentic refused to expound on her reasoning for so advising Rubenstein. Thus, in accordance with Hahn, we find Valentic's limited communications to Rubenstein to be privileged. See, Madorsky,89 Ohio App.3d at 553-554.
 {¶ 24} We, therefore, now must determine whether Altier clearly and convincingly demonstrated that the communication was made with knowledge that the statements were false or acting with reckless disregard as to their truth or falsity. In this case, Valentic did not make any statement of fact. Rather, she merely stated that she would not work with Altier and, thus, gave Rubenstein the choice to continue his relationship with Valentic or begin one with Altier. Thus, we find that Altier could not clearly and convincingly establish that Valentic acted with malice in making the statement to Rubenstein and, therefore, summary judgment was appropriate. See id. at 554.
 {¶ 25} Altier's first assignment of error is without merit.
 {¶ 26} In his second assignment of error, Altier argues that, since Bond's motion to dismiss "obviously relied" on matters outside the record, specifically the June 7, 2000 letter from Bond to Lafferty, the trial court erred in not converting Bond's motion to dismiss into a motion for summary judgment.
 {¶ 27} "A motion to dismiss for failure to state claim upon which relief can be granted is procedural and tests the sufficiency of the complaint." State ex rel. Hanson v. GuernseyCty. Bd. of Commrs. (1992), 65 Ohio St.3d 545, 548. "[I]t must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." O'Brien v.Univ. Community Tenants Union (1975), 42 Ohio St.2d 242, syllabus. In considering a motion to dismiss for failure to state a claim, a trial court cannot consider matters beyond the pleadings, without converting the motion into one for summary judgment. Civ.R. 12(B).
 {¶ 28} In this case, the trial court does not indicate in its judgment entry that it considered the contents of the letter in granting Bond's motion to dismiss. Rather, the trial court granted the motion "for the reasons enunciated in [Bond's] brief." Similarly, Bond's brief does not specifically reference the contents of the letter. Instead, Bond simply argues that, even if Altier's allegations regarding the letter and its content, as set forth in his complaint, are taken as true, Altier still fails to state a claim upon which relief can be granted. Thus, it is evident that trial court's decision to grant Bond's motion to dismiss did not rely on evidence beyond the pleadings. The trial court, therefore, did not err by not converting Bond's motion to dismiss into a motion for summary judgment.
 {¶ 29} Altier's second assignment of error is without merit.
 {¶ 30} Altier argues in his third assignment of error that Bond waived all affirmative defenses when he filed the motion to dismiss without first answering the complaint. Altier further argues that the four affirmative defenses relied upon by Bond, i.e. immunity, running of the statute of limitations, no attorney-client relationship, and that Altier was not a member of the class where reliance is foreseen, are not applicable in this case.
 {¶ 31} In reviewing a judgment granting a Civ.R. 12(B)(6) motion to dismiss, we must "independently review the complaint to determine whether the dismissal was appropriate." Ferreri v. ThePlain Dealer Publishing Co. (2001), 142 Ohio App.3d 629, 639, citing Greeley v. Miami Valley Maintenance Contractors, Inc.
(1990), 49 Ohio St.3d 228. In doing so, "[t]he factual allegations of the complaint and items properly incorporated therein must be accepted as true. Furthermore, the plaintiff must be afforded all reasonable inferences possibly derived therefrom. * * * It must appear beyond doubt that plaintiff can prove no set of facts entitling her to relief." Vail v. The Plain DealerPublishing Co., 72 Ohio St.3d 279, 280, 1995-Ohio-187 (internal citations omitted).
 {¶ 32} Since affirmative defenses typically rely on matters beyond the pleadings, affirmative defenses normally cannot be raised in a Civ.R. 12(B)(6) motion to dismiss. Loyer v. Turner
(1998), 129 Ohio App.3d 33, 35, citing State ex rel. Freeman v.Morris (1991), 62 Ohio St.3d 107, 109. "An exception exists, however, where the existence of the affirmative defense is obvious from the face of the complaint itself." Id. (citations omitted); see, also, Mills v. Whitehouse Trucking Co. (1974),40 Ohio St.2d 55, 58 ("a Civ.R. 12(B)(6) motion will lie to raise the bar of the statute of limitations when the complaint shows on its face the bar of the statute").
 {¶ 33} In this case, since the date of the purportedly defamatory statement, the June 7, 2000 letter, is known, it can be gleaned from the face of the complaint whether the statute of limitations had run concerning this communication. Further, since the nature of the June 7, 2000 letter, to protect the interests of McNish's family in the probate of her estate, is evident from the face of the complaint, we can determine whether the defense of immunity is appropriate in this case. Moreover, Bond's assertion in the motion to dismiss that, since Altier is not a member of the class whose reliance is foreseen, Altier's negligent misrepresentation claim must be dismissed, is not an affirmative defense. Bond argues that Altier's complaint fails to establish a necessary element of negligent misrepresentation, a proper subject for a Civ.R. 12(B)(6) motion. Similarly, Bond's claim that, because there was no attorney-client relationship, Altier's attorney malpractice claim must be dismissed, is not an affirmative defense. Bond simply asserts that Altier fails to establish a necessary element of attorney malpractice, again a proper subject for a Civ.R. 12(B)(6). Since we have determined that the trial court properly considered Bond's motion to dismiss, we now must determine whether the trial court's decision to grant the motion to dismiss was appropriate.
 {¶ 34} A third party may, in limited circumstances, bring a cause of action for negligent representation against an attorney.Orshoski v. Krieger (Nov. 9, 2001), 6th Dist. No. OT-01-009, 2001 Ohio App. LEXIS 5018, at *13. The third party must be "a member of a limited class whose reliance on the * * * representation is specifically foreseen." Haddon View Invest.Co. v. Coopers Lybrand (1982), 70 Ohio St.2d 154, syllabus. Thus, a negligent representation claim by a third party against an attorney is "confined only to one directly affected by the attorney's misrepresentation and whose interest is identical tothose of that attorney's client." Orshoski, 2001 Ohio App. LEXIS 5018, at *14 (emphasis added).
 {¶ 35} In Altier's complaint, he does not assert that he relied on Bond's representations, nor does he claim that his interest is, in any way, identical to that of Bond's client, McNish's relatives. Rather, Altier claims that third parties relied on Bond's representations. Thus, accepting Altier's allegations as true, Altier's complaint did not allege, nor could it be construed to allege, that he was a member of the class that relied on the representation, a necessary element of a negligent representation claim. Haddon, 70 Ohio St.2d 154, at syllabus;Orshoski, 2001 Ohio App. LEXIS 5018, at *14. Bond's motion to dismiss as to the negligent representation claim was, therefore, properly granted. See Universal Coach, Inc. v. New York CityTransit Auth., Inc. (1993), 90 Ohio App.3d 284, 291 (citation omitted) (a complaint that fails to allege the necessary elements of a claim "cannot withstand a motion to dismiss as based upon a failure to state a claim upon which relief can be granted").
 {¶ 36} As to Altier's attorney malpractice claim, "[i]t is by now well-established in Ohio that an attorney may not be held liable by third parties as a result of having performed services on behalf of a client, in good faith, unless the third party is in privity with the client for whom the legal services were performed, or unless the attorney acts with malice." Simon v.Zipperstein (1987), 32 Ohio St.3d 74, 76, citing Scholler v.Scholler (1984), 10 Ohio St.3d 98, paragraph one of the syllabus. The statue of limitations for an attorney malpractice claim is one year after the cause of action accrued. R.C.2305.11(A). "[A]n action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the [plaintiff] discovers or should have discovered that his injury was related to [the] attorney's act * * * and the [plaintiff] is put on notice of a need to pursue his possible remedies against the attorney." Zimmie v. Calfee, Halter andGriswold (1989), 43 Ohio St.3d 54, syllabus. This typically requires an inquiry into the particular facts of the action to determine, among other things, the occurrence of the cognizable event which does or should alert a reasonable person of this claimed malpractice. See id. at 57-58.
 {¶ 37} In this case, Altier alleges the necessary requirements of a third party attorney malpractice claim, including that Bond acted maliciously. See Scholler,10 Ohio St.3d at 103; Border City S. L. Assn. v. Moan (1984),15 Ohio St.3d 65, 66. Altier's attorney malpractice claim stems from the June 7, 2000 letter. In his complaint, Altier acknowledges that, as a result of this letter, Lafferty brought suit against Altier on July 6, 2000. We find that the filing of the suit was the cognizable event that did or should have put Altier on notice of Bond's alleged malpractice. Thus, the accrual date was July 6, 2000. See Zimmie, 43 Ohio St.3d at 59. Altier brought the initial suit in April 2002, well beyond the one year statute of limitations stated in R.C. 2305.11(A). Thus, we find that Altier's legal malpractice claim is barred by the statute of limitations. Since the date of the cognizable event is apparent from the face of the complaint, we find that dismissal of the attorney malpractice claim was proper. See Mills,40 Ohio St.2d at 58
("a Civ.R. 12(B)(6) motion will lie to raise the bar of the statute of limitations when the complaint shows on its face the bar of the statute").
 {¶ 38} Similar to an attorney malpractice claim, the statute of limitations for a defamation claim is one year from the date the cause of action accrues. R.C. 2305.11(A). A cause of action for defamation accrues when the words are published or spoken, rather than when the plaintiff becomes aware of them. Singh v.ABA Publishing Am. Bar Assn., 10th Dist. No. 02AP-1125, 2003-Ohio-2314, at ¶ 22 (citations omitted); Glass v. Glass,
4th Dist. No. 02CA704, 2003-Ohio-4477, at ¶ 18 (citations omitted).
 {¶ 39} In this case, Altier's defamation claim stems from the June 7, 2000 letter. Given this publication date of June 7, 2000, we find that Altier's defamation claim is barred by the statute of limitations. See Singh, 2003-Ohio-2314, at ¶ 24; Reimund v.Brown (Nov. 2, 1995), 10th Dist. No. 95APE04-487, 1995 Ohio App. LEXIS 4824, at *8-*9. Thus, since the date of accrual was evident from the face of the complaint, dismissal of this cause of action was proper. See Mills, 40 Ohio St.2d at 58. In finding that Altier's defamation claim is time barred, we do not need to address whether Bond was immune from liability under the doctrine of absolute privilege in a judicial proceeding.
 {¶ 40} Altier's third assignment of error is meritless.
 {¶ 41} For the foregoing reasons, we hold that Altier's assignments of error are without merit. The decision of the Geauga County Court of Common Pleas is affirmed.
O'Neill, J., Rice, J., concur.
[1] In Fedler's affidavit submitted by Altier in support of his brief in opposition to Valentic's motion for summary judgment, Fedler asserts that the form was actually signed the day before.
[2] Although the trial court granted summary judgment in favor of Valentic on both the defamation claim and the interference with business relations claim, Altier fails to argue in his brief that the trial court erred in granting summary judgment on the defamation claim. Rather, his entire brief centers around his assertion that Valentic was not entitled to summary judgment on the interference with business relations claims. We will, therefore, limit our review to this claim.