[Cite as *Byers DiPaola Castle, L.L.C. v. Portage Cty. Commrs.*, 2015-Ohio-3089.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**PORTAGE COUNTY, OHIO**

| | | |
|---|---|---|
| THE BYERS DIPAOLA CASTLE, LLC, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| | : | **CASE NO. 2014-P-0047** |
| - vs - | : | |
| PORTAGE COUNTY BOARD OF COMMISSIONERS, et al., | : | |
| Defendants-Appellees. | : | |

Civil Appeal from the Portage County Court of Common Pleas.
Case No. 2012 CV 1425.

Judgment: Affirmed.

*James E.J. Ickes* and *David E. Williams*, Williams, Welser, Kratcoski & Can, L.L.C., 11 South River Street, Suite A, Kent, OH 44240 (For Plaintiff-Appellant).

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Defendants-Appellees Portage County Board of Commissioners and Michael A. Marozzi).

*Robert J. Paoloni*, Paoloni & Lewis, 250 South Water Street, P.O. Box 762, Kent, OH 44240 (For Defendants-Appellees Harvest Rose Limited Partnership and Neighborhood Development Services, Inc.).

TIMOTHY P. CANNON, P.J.

{¶1} Appellant, The Byers DiPaola Castle, LLC ("Byers") appeals the judgment of the Portage County Court of Common Pleas granting the motions for summary judgment of appellees, Portage County Board of Commissioners and Portage County Engineer (collectively "County"), Neighborhood Development Services, Inc., and

Harvest Rose Limited Partnership ("Harvest Rose") on all four counts alleged in Byers' complaint and dismissing Byers' claims. Based on the following, we affirm.

{¶2} From 1951 to 2005, the property at issue was owned by Sam and Ruth DiPaola. Currently, it is owned by The Byers DiPaola Castle, LLC, whose members consist of three sisters: Peggy, Veronica, and Maria. It is undisputed that in 1912 the owners of the subject property, then-living members of the DiPaola family, granted the Board of Commissioners of Portage County a stormwater easement. This easement granted the Commissioners the right to maintain forever the "pipe line on, across and in our land * * * terminating on the edge of Collin's Pond." The easement granted Portage County the authority

> [t]o make the necessary and proper connection of all drainage pipes now crossing or intersecting the herein proposed pipe line and all connections to be made in a manner satisfactory to the grantee herein. Said grantee further agreeing to make any and all drainage connections which may be changed or disturbed by reason of the repair or change at any time of the herein proposed pipe line.

{¶3} In 1997, the County began an improvement project ("the 1997 Improvement Project") on the property at issue. At this time, Mr. DiPaola was the owner of the property. As a part of the 1997 Improvement Project, the County removed the existing 24-inch pipe within the easement area and replaced it with a 48-inch pipe. There was evidentiary material submitted by the County that Mr. DiPaola was well aware of the project, witnessed part of its construction, and raised no objection to the replacement of the 85-year-old pipe.

{¶4} On October 30, 2007, Harvest Rose, a limited partnership, acquired a single, undivided parcel of vacant land consisting of 24.574 acres by a Warranty Deed from Community and Economic Development Corporation. This land abutted the

2

property owned by Mr. DiPaola. On this land, Harvest Rose proposed to build the Harvest Rose Project – a 40-unit, low-income, residential rental housing project to be occupied exclusively by persons 62 years of age or older.

{¶5} On July 25, 2008, the Portage County Engineer issued a Portage County Roadway Work Permit (the "2008 Permit"), which authorized and consented to Harvest Rose tying in two "12" Storm Sewer outlets from proposed retention ponds into the County's existing 48" Concrete Storm Sewer."

{¶6} In *Byers I*, we recognized that Byers had continually objected to the proposed plans of Harvest Rose claiming, inter alia, that water drains from the project site onto Byers' property.[1] Due to litigation, Harvest Rose's conditional zoning certificate that it had previously obtained from the Ravenna City Planning and Zoning Commission (the "Commission") expired; Harvest Rose reapplied for a conditional use certificate to build the project, which was approved. In response, Byers appealed.[2] In *Byers II*, we observed that the site plan contemplates tying into the stormwater easement, which empties directly into Collin's Pond, located on Byers' property. In *Byers II*, we affirmed the decision of the trial court affirming the Commission's decision.

{¶7} While *Byers II* was pending in this court, Byers filed the instant complaint against Harvest Rose and the County alleging the following: Count One, breach of contract/trespass; Count Two, declaratory judgment; Count Three, injunctive relief; and Count Four, unconstitutional taking and appropriation.

---

1. For a detailed recitation of the factual history, please refer to our opinion in *Byers DiPaola Castle, LLC v. Ravenna City Planning Comm.*, 11th Dist. Portage No. 2010-P-0063, 2011-Ohio-6095 ("*Byers I*").

2. *DiPaola Castle, LLC v. Ravenna City Planning Comm.*, 11th Dist. Portage No. 2012-P-0151, 2013-Ohio-3977 ("*Byers II*").

3

{¶8} Appellees filed motions to dismiss, which the trial court, after notice to the parties, converted to motions for summary judgment. Thereafter, Harvest Rose and the county defendants supplemented their pending motions. Byers filed a brief in opposition. The trial court granted both Harvest Rose's and the County's motions for summary judgment on all claims, thereby dismissing the complaint of Byers. Byers filed a timely notice of appeal.

{¶9} We first address Byers' final assignment of error. Byers' fifth assignment of error alleges:

{¶10} "The trial court violated Byers' constitutional rights under Article I, [Section] 16 of the Ohio Constitution and the 14th Amendment to the U.S. Constitution by converting defendants' motions to dismiss to motions for summary judgment."

{¶11} Byers' argues that a trial court should not be able to convert a Civ.R. 12(B)(6) motion to dismiss into a motion for summary judgment. We disagree.

{¶12} We review the trial court's management of the case under an abuse of discretion standard. Because there was adequate notice to the parties and no objection by any party, we find it was within the discretion of the trial court to convert the Civ.R. 12(B)(6) motion to dismiss into a motion for summary judgment. The trial court expressly notified the parties of such conversion in a February 12, 2013 judgment entry. This allowed the parties the opportunity to submit Civ.R. 56 evidentiary material. In fact, the County and Harvest Rose were afforded 30 days to file a motion for summary judgment and Byers was permitted 21 days to respond. As noted, Byers failed to object to the procedure employed by the trial court.

{¶13} Civ.R. 61 provides, in relevant part: "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect

4

the substantial rights of the parties." Here, Byers was given notice of the trial court's decision to convert the motion; it was also given a fair and reasonable opportunity to respond to the converted motion.

{¶14} Byers' fifth assignment of error is without merit.

{¶15} The remaining assignments of error relate to the trial court's granting of appellee's motions for summary judgment. In order for a motion for summary judgment to be granted, the moving party must demonstrate:

> (1) [N]o genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.

*Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385 (1996) (citation omitted).

{¶16} Summary judgment will be granted if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of facts, if any, * * * show that there is no genuine issue as to any material fact * * *." Civ.R. 56(C). Material facts are those "that might affect the outcome of the suit under the governing law [of the case]." *Turner v. Turner*, 67 Ohio St.3d 337, 340 (1993), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

{¶17} If the moving party meets this burden, the nonmoving party must then provide evidence illustrating a genuine issue of material fact, pursuant to Civ.R. 56(E). *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Civ.R. 56(E) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If

5

the party does not so respond, summary judgment, if appropriate, shall be entered against the party.

Summary judgment is appropriate pursuant to Civ.R. 56(E) if the nonmoving party does not meet this reciprocal burden.

{¶18} Appellate courts review a trial court's entry of summary judgment de novo. *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711 (1993). "*De novo* review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine if as a matter of law no genuine issues exist for trial." *Brewer v. Cleveland Bd. of Edn.,* 122 Ohio App.3d 378, 383 (1997), citing *Dupler v. Mansfield Journal, Co., Inc.*, 64 Ohio St.2d 116, 119-120 (1980).

{¶19} Under its first assignment of error, Byers alleges:

{¶20} "The trial court erred in granting summary judgment in favor of the county defendants as to count one of Byers' complaint, to wit, breach of easement, because the action is not time-barred under the appropriate statute of limitations."

{¶21} Byers argues the trial court erred by applying an improper statute of limitations period to time bar Count One. Instead of the 10-year time period set forth under R.C. 2305.14, as cited by the trial court, appellant maintains the 15-year period set forth under former R.C. 2305.06 applies. We do not agree.

{¶22} Count One alleges breach of contract but asserts the breach in terms of a breach of easement claim. Byers alleges the County violated the express terms of the easement and thereby infringed upon Byers' property rights. A review of the allegation, however, demonstrates Byers fails to assert any specific damages resulting from the alleged breach.

{¶23} In order to set forth a cognizable claim for breach of contract, Byers was required to allege the following: (1) the existence of a contract; (2) performance by the

6

plaintiff; (3) breach by the defendant; and (4) damages. *Doner v. Snapp*, 98 Ohio App.3d 597, 600 (2d Dist.1994). "Damages are an essential element to a breach of contract claim." *Allen v. Znidarsic Bros., Inc.*, 11th Dist. Lake No. 99-L-088, 2000 Ohio App. LEXIS 6206, *9 (Dec. 29, 2000). Without damages, there can be no remedy for breach of contract.

**{¶24}** In construing a complaint, we look to the substance of the complaint, not the caption, to determine the nature of the cause being pleaded. *Funk v. Rent-All Mart, Inc.*, 91 Ohio St.3d 78, 80 (2001) (look to the actual nature or subject matter pleaded in complaint, not the label). The relationship between the County and Byers is based on the granting of an easement. According to Black's Law Dictionary, "easement" is defined as follows: "An interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose * * *." In this case, Byers represents the servient estate, and the County represents the dominant estate.

**{¶25}** It is clear that the breach claimed in Count One concerns the use of the easement in question. It is, as stated, a claimed use beyond the terms of the grant of easement, i.e., a grant of interest in real property. Byers asserts the County violated the terms of the easement by connecting new and additional pipes to the pipeline, thereby exceeding the scope of the easement. Even assuming such a violation occurred, any damages flowing from the violation are, given the pleadings, amorphous or non-quantifiable. There is no allegation in Count One of any specific damages suffered.

**{¶26}** Byers, under the breach of contract claim, seeks an order enjoining the County from utilizing the easement in a manner inconsistent with its express terms; in effect, the purported breach of contract claim functionally mirrors Byers' claim for

7

injunctive relief. Although equitable relief in the form of specific performance may be sought in a breach of contract claim, Byers did not expressly seek an order for the County to specifically perform pursuant to the terms of the easement nor did it allege damage for failure to do so. The allegations are limited to the failure to abide by the terms of the express easement.

{¶27} We therefore agree with the trial court and conclude the 15-year limitation period under former R.C. 2305.06, governing written contracts, is inapplicable. This is not a claim based on a contract to enter into an easement, the terms of which Byers acknowledged at oral argument were unknown. It is a claim involving the scope of the transfer of an interest in property, to wit: the scope of the easement that was given to the County.

{¶28} In ruling Byers' breach of contract/breach of easement claim time-barred, the trial court stated:

> The statutes, R.C. 2305.131 and 2305.14, allow only ten years for such a claim. When completed in 1997 Plaintiff's predecessors had to be aware of the length of the 48 inch drain pipe. Plaintiff has waited 15 years to bring this present action. As the statute of limitations has run, Plaintiff's claim has been extinguished.

{¶29} R.C. 2305.14 provides: "An action for relief not provided for in sections 2305.04 to 2305.131 and section 1304.35 of the Revised Code shall be brought within ten years after the cause thereof accrued. This section does not apply to an action on a judgment rendered in another state or territory."

{¶30} The cause of action pleaded under Count One seeks relief not provided for in R.C. 2305.04 to R.C 2305.131 or R.C. 1304.35. As noted, it is a claim for the violation of the terms of a grant of interest in real property, i.e. the easement in question.

8

The trial court, therefore, properly applied the ten-year statute of limitations set forth under R.C. 2305.14.

{¶31} Byers' first assignment of error is without merit.

{¶32} Byers' second assignment of error alleges:

> The trial court erred in granting summary judgment in favor of the county defendants as to counts one (breach of easement and trespass) and four (unconstitutional taking) of Byers' complaint because the statute of limitations was tolled as a matter of law and there exist genuine issues of material fact regarding notice.

{¶33} Byers raises numerous sub-issues under the second assignment of error. Before addressing the substance of Byers' assigned error, we first address two preliminary issues raised by Byers: (1) the County failed to raise the affirmative defense of statute of limitations, and (2) the County moved only to dismiss Count Four - the takings claim.

{¶34} First, Byers maintains the County waived the affirmative defense of statute of limitations when it filed a motion to dismiss prior to answering the complaint.

{¶35} This court has observed:

> Since affirmative defenses typically rely on matters beyond the pleadings, affirmative defenses normally cannot be raised in a Civ.R. 12(B)(6) motion to dismiss. * * * 'An exception exists, however, where the existence of the affirmative defense is obvious from the face of the complaint itself.' * * * *Mills v. Whitehouse Trucking Co.* (1974), 40 Ohio St.2d 55, 58, 320 N.E.2d 668 ('a Civ.R. 12(B)(6) motion will lie to raise the bar of the statute of limitations when the complaint shows on its face the bar of the statute').

*Altier v. Valentic*, 11th Dist. Geauga No. 2003-G-2521, 2004-Ohio-5641, ¶32, quoting *Loyer v. Turner*, 129 Ohio App.3d 33, 35 (6th Dist.1998).

{¶36} As acknowledged by Byers in its appellate brief, "Byers alleged violations in 1997 and 2012. * * * Byers' clearly pled two underlying violations by County

9

Defendants: the 1997 Expansion and the issuance of the 2012 Permit." We find no merit in Byers' argument because the existence of an affirmative defense is clear from the face of the complaint. In addition, as noted above, the trial court converted the motion to dismiss, which was filed before any responsive pleading was required, to a motion for summary judgment. Therefore, the motion for summary judgment was considered and ruled on before any responsive pleading was required. There was no objection to this conversion by the parties. Therefore, appellees were free to raise any affirmative defense in their motions for summary judgment.

{¶37} Second, Byers maintains the County only asserted the affirmative defense of statute of limitations with respect to Count Four. This argument is also without merit as a review of County's motion to dismiss broadly states, "Plaintiff's Complaint is barred by the applicable statute of limitations."

{¶38} Next, we discuss the substance of the two alleged underlying violations: (1) the 1997 Improvement Project and (2) allowing Harvest Rose to tie into the County's existing 48" Concrete Storm Sewer located on Byers' property.

**The 1997 Improvement Project**

{¶39} Byers claims the trial court erred in finding Counts One and Four time-barred as it relates to the 1997 Improvement Project. Byers argues the 1997 Improvement Project constitutes a continuing violation, which tolls the statute of limitations.

{¶40} With respect to Byers claim for takings, R.C. 2305.09(E) states, "an action for relief on the grounds of a physical or regulatory taking of real property must generally be brought within four years after the cause accrued." *State ex rel. Nickoli v. Erie Metroparks*, 124 Ohio St.3d 449, 2010-Ohio-606, ¶29. "A cause of action for injury

10

to real property and relief on the grounds of a physical or regulatory taking accrues, and the four-year statute of limitations commences to run, when the injury or taking is first discovered, or through the exercise of reasonable diligence, should have been discovered." *State ex rel. Stamper v. City of Richmond Heights*, 8th Dist. Cuyahoga No. 94721, 2010-Ohio-3884, ¶25.

**{¶41}** To support Byers' tolling argument, Byers relies on the Ohio Supreme Court's opinion in *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117.

**{¶42}** In *Doner*, the Court held: "When an act carried out on the actor's own land causes continuing damage to another's property and the actor's conduct or retention of control is of a continuing nature, the statute of limitations is tolled." *Id.*, paragraph two of the syllabus. *Doner* involved five landowners of property located downstream from the western spillway of Grand Lake St. Marys, a man-made lake created between 1837 and 1841, located in Mercer and Auglaize counties. Relators presented "substantial, credible lay evidence" demonstrating flooding to their properties and also presented expert evidence in support of their claims. In determining whether R.C. 2305.09(E), the four-year statute of limitations period for a taking claim was tolled, the Ohio Supreme Court analyzed a series of cases and focused upon where the act that constituted a taking occurred. For example, in those cases where the act occurred on the plaintiff's or relator's property, thus having "direct and immediate notice of any alleged taking as well as the cause of taking," the Court determined the four-year statute of limitations period in R.C. 2305.09(E) is applicable. *Id.* at ¶46. Where, however, the "defendants had allegedly engaged in conduct on their own property that cause flooding or water damage to adjoining landowners' property, and the defendants had retained control over their property," the four-year statute of limitations in R.C. 2305.09(E) is

11

inapplicable, "because [the respondent's or defendant's] ongoing control has tolled the running of the limitations period." *Id.* at ¶45, ¶47.

{¶43} The facts at issue are inapposite to those in *Doner* and preclude the application of the continuous-violation doctrine. Here, the 1997 Improvement Project occurred, in part, on Byers' property. The continuous-violation doctrine did not toll the statute of limitations, because the County did not perform or take any additional actions after the 1997 Improvement Project. The present effects of a single past action do not trigger a continuing-violations exception to the statute of limitations. *See, e.g., Nickoli* at ¶31-37 (where metro parks board constructed a recreational trail through a canal corridor that ran across the owners' properties, the Ohio Supreme Court held that cause of action accrued when the trail first opened to the public, rejecting relators' claim that their property was continuously materially damaged every day until the decision to open the trail was reversed); [*Stamper*, *supra*, at ¶24-27] (statute of limitations began to run on the date the city approved the plan that provided for the property's storm water drainage pattern which had caused several flooding incidents on relators' property); [*Painesville Mini Storage, Inc. v. City of Painseville*, 11th Dist. Lake No. 2008-L-092, 2009-Ohio-3656, at ¶31] (building permit allowed construction on a tract over which landowner had an easement. This court held a claim for relief accrued when building permit had been granted, and landowner was not newly damaged each day after the permit was issued); *State ex rel. Miami Overlook, Inc. v. Village of Germantown*, 2nd Dist. Montgomery No. 24017, 2011-Ohio-3419 (date of enactment of zoning ordinance, which allegedly rendered landowner's property unfit for use, commenced the running of the statute of limitations)." *State ex rel. Dinardo v. Chester Twp.*, 11th Dist. Geauga No. 2012-G-3063, 2012-Ohio-5828, ¶11.

12

{¶44} Because the continuing-violations doctrine does not toll the application of the statute of limitations, we find Byers' claim for takings was required to be brought within four years of accrual as required by R.C. 2305.09(E).

{¶45} Byers also argues the continuing-violations doctrine is applicable to Count One. We extend our aforementioned reasoning and decline to apply the continuing-violations doctrine to Count One and any claim Byers may have for trespass. *See Doner, supra*, at ¶37 ("R.C. 2305.09 contains a comparable four-year limitations period for 'trespassing upon real property.' R.C. 2305.09(A). In construing the statute of limitations for actions for trespass upon real property, we have held that if a trespass is continuing rather than a single completed act, the limitations period is tolled."). *See also Vitek v. AIG Life Brokerage*, S.D.Ohio No. 06-cv-615, 2008 U.S. Dist. LEXIS 82132 (Sept. 22, 2008) (plaintiff "has not cited any cases, nor is the Court aware of any, indicating that Ohio would entertain extending the continuing violation doctrine to breach of contract cases").

{¶46} Finding the continuing-violations doctrine not applicable to the 1997 Improvement Project, we address Byers' contention that there remain genuine issues of material fact as to whether Mr. DiPaola had "direct and immediate notice" of the "County Defendants' breach of easement, the resulting trespass, and the taking of his property in 1997."

{¶47} Here, the event that constituted the alleged taking, the 1997 Improvement Project, started and was completed in 1997. Despite Byers' attestations to the contrary, there is ample evidentiary material in the record that supports that Mr. DiPaola, a predecessor of Byers, either was or should have been aware of these events. The County attached to its motion for summary judgment numerous newspaper articles from

13

the Record-Courier depicting this 1997 Improvement Project; one published article specifically stated that the pipes were being replaced and enlarged. The construction occurred, in part, on Mr. DiPaola's property, and the evidence demonstrates that he was present at the construction site. In his deposition, Daniel Jendrisak, Construction Coordinator of the Portage County Engineer's Office, stated these pipes were lying on the site. In distinguishing the old pipe from the new pipe, he stated, "You could walk through the four foot pipe" but not the old pipe. Mr. Jendrisak described the old pipe as muddy, while the new pipe was clean.

**{¶48}** Additionally, the minutes of the Ravenna City Planning Commission meetings, attached to the County's motion for summary judgment, demonstrates that a Byers' representative had notice of the alleged effect of the County's actions in February 2008; at the February 25, 2008 Ravenna City Planning Commission meeting, a Byers' representative stated, "Ten years ago, I could jump the little stream in our backyard that the County put in to go into Collins Pond. Today, it is a river – you can't jump it anymore." The County provided evidentiary material to demonstrate that Mr. DiPaola, a predecessor of Byers, either was or should have been aware of the 1997 Improvement Project. Byers, however, failed to meet its reciprocal burden, pursuant to Civ.R. 56(E), as it failed to submit any evidentiary material that would create a genuine issue of material fact with respect to this issue.

**{¶49}** We therefore find that the trial court did not err in determining Counts One and Four of Byers' Complaint are time-barred as they relate to the 1997 Improvement Project.

14

**Harvest Rose Tying into the County's Existing 48" Concrete Storm Sewer**

**{¶50}** Byers further maintains the County allowing Harvest Rose to tie into the 48" Concrete Storm Sewer in 2012 is a separate violation, "which resulted in a separate and new trespass and taking." Byers reasons the 2008 Portage County Roadway Work Permit ("the 2008 Permit") expired on November 30, 2008, and, thus, became void. As a result, Byers argues, a "2012 Permit" was issued and such claims, as they relate to the issuance of this permit, are within the applicable statute of limitations. We disagree.

**{¶51}** The record demonstrates that the 2008 Permit was issued, which was attached to Harvest Rose's motion for summary judgment. Harvest Rose also attached the 2008 Permit with a handwritten notation that extended the completion date to November 2013. The County submitted the affidavit of Mr. Jendrisak, Construction Coordinator of the Portage County Engineer's Office. In his affidavit, Mr. Jendrisak averred that a permit extension does not generally require a new application; a permit extension may be granted after the initial to-be-completed-by date, depending on the circumstances; he was familiar with the 2008 Permit; and he had authorized multiple extensions to the 2008 Permit due to litigation delaying the construction. Mr. Jendrisak noted that a "2012 Permit" was not issued but that the 2008 Permit was extended to account for numerous delays. Consequently, Harvest Rose and the County submitted evidentiary material to demonstrate no genuine issue of material fact — a new permit was not issued in 2012, but the 2008 Permit was actually extended due to the litigation delaying the project.

**{¶52}** As the non-moving party, Byers was therefore required to provide contrary evidence illustrating a genuine issue of material fact, pursuant to Civ.R. 56(E). Byers

15

failed to submit any evidentiary material that created any genuine factual dispute with respect to this issue.

{¶53} As a result, Counts One and Four of Byers' Complaint, as they relate to the issuance of the 2008 Permit authorizing and consenting to the tie-in by Harvest Rose, are time-barred.

{¶54} As the final sub-issue under the second assignment of error, Byers argues that it will be prejudiced by the findings of the trial court as they relate to the underlying merits of its claim. We do not agree, however, because the trial court found Counts One and Four are time-barred by the applicable statute of limitations. We agree with the trial court. Any extraneous legal conclusions by the trial court based on the facts alleged are therefore inconsequential to the trial court's determination.

{¶55} Byers' second assignment of error is without merit.

{¶56} We address Byers' third and fourth assignments of error together, which provide:

> [3.] The trial court erred in granting summary judgment in favor of the county defendants as to counts two and three of Byers' complaint, to wit: declaratory judgment and injunctive relief.

> [4.] The trial court erred in granting summary judgment in favor of the developer defendants.

{¶57} Under these assigned errors, Byers asserts the trial court erred in awarding summary judgment to appellees on Count Two, declaratory judgment, and Count Three, injunctive relief. Byers argues the trial court erroneously relied upon an unrelated case, *Byers II*, in entering summary judgment in appellees' favor. Byers maintains *Byers II* dealt with an issue distinct from the matters alleged in the instant complaint, and as a result, the trial court committed reversible error when it essentially gave preclusive effect to its ruling.

16

**{¶58}** In its judgment, the trial court stated the following:

> [Byers] petitions for injunctive and declaratory relief against County Defendants in order to prohibit Developer Defendants connecting to County Defendants' 48 inch drain pipe.
>
> Both this Court and the Court of Appeals have concluded that Developer Defendants may connect to the County Defendants' drain pipe. Since these courts have judicially approved Developer Defendants connecting two 12 inch stormwater drain pipes to County Defendants' 48 inch drain pipe, [Byers'] claims for declaratory and injunctive relief to prevent Developer Defendants' connections cannot succeed.

**{¶59}** The trial court's reference to the judicial approval of the above mentioned connections relate to both *Byers I* and *Byers II*. A brief discussion of those matters is therefore beneficial.

**{¶60}** *Byers I* was a legal proceeding, separate from the instant matter, that stemmed from a decision of the Commission, granting a conditional use certificate to Harvest Rose.

**{¶61}** Harvest Rose proposed building a forty-unit, low income residential rental housing project for senior citizens on land abutting Byers' property. Byers objected to the plans as a violation of a mandatory provision of the Ravenna City Code. Over Byers' objection, the Commission approved the project and granted Harvest Rose a conditional use certificate to proceed with construction of its proposed development. Byers appealed to the trial court and prevailed. This court affirmed the trial court in part and reversed the decision in part, finding the court erred in applying the subdivision regulations to the single lot development project. *Byers I*, *supra*, at ¶82, ¶91.

**{¶62}** The litigation of *Byers I* caused the original, conditional use certificate to expire. Harvest Rose subsequently applied and received a second conditional use certificate for construction of its project. Byers appealed to the trial court under the

17

authority of Ravenna Ordinance 1262.05, requiring the landowner's written approval if discharge points from the site onto private property are different from the existing conditions. The trial court affirmed the Commission's conditional use certification finding. In *Byers II*, this court affirmed the trial court's decision, upholding the conditional use certificate and allowing Harvest Rose's construction of its project. *Id.* at ¶17, ¶19. In affirming the trial court's decision, this court quoted the following findings of the trial court:

> [Byers] was particularly concerned that Harvest Rose's use of the stormwater pipe and easement would create more runoff onto its property. If additional runoff would change the existing conditions present on [Byers'] property, [Byers] would have to approve Harvest Rose's use of the stormwater pipe.
>
> The transcript of the hearing includes some evidence that Harvest Rose's development would actually runoff onto [Byers'] property. There was no confirmation that use of the stormwater pipe and easement would result in any change in the existing conditions. If the Commission members concluded that runoff would either be reduced or not change the existing conditions, Ravenna Ord. 1262.05, Appendix B, would not apply to [Byers'] concerns of increased runoff. The Commission apparently concluded that the stormwater focused into the pipe and easement would not create more runoff or change the existing conditions on [Byers'] property. Thus, Ravenna Ord. 1262.05, Appendix B, did not apply.

*Byers II*, *supra*, at ¶8.[3] After quoting language from the 1912 grant of easement at issue in this case, this court observed "[w]hether Portage County has the authority to allow Harvest Rose to tie into the easement which terminates at the edge of Collin's Pond, is not at issue in this appeal." *Id.* at ¶18.

{¶63} With the above background in mind, Byers is correct that the holding in *Byers II* cannot, by operation of res judicata, preclude its complaint for declaratory and

---

3. These findings were also made part of the record in the instant case through Harvest Rose's motion for summary judgment.

18

injunctive relief. Nevertheless, *Byers II* does impact Byers' claims for declaratory and injunctive relief.

**{¶64}** "In order to obtain declaratory relief, [a] plaintiff must establish (1) a real controversy between the parties, (2) a justiciable controversy, and (3) that speedy relief is necessary to preserve the rights of the parties." *R.A.S. Entertainment, Inc. v. Cleveland*, 130 Ohio App.3d 125, 128 (1998). In *Mid-American Fire & Cas. v. Heasley*, 113 Ohio St.3d 133, 2007-Ohio-1248, ¶9, the Supreme Court of Ohio observed:

> Although broad in scope, the declaratory judgment statutes are not without limitation. Most significantly, in keeping with the long-standing tradition that a court does not render advisory opinions, they allow the filing of a declaratory judgment only to decide "an actual controversy, the resolution of which will confer certain rights or status upon the litigants." *Corron v. Corron* (1988), 40 Ohio St.3d 75, 79. Not every conceivable controversy is an actual one. As the First District aptly noted, in order for a justiciable question to exist, "'[t]he danger or dilemma of the plaintiff must be present, not contingent on the happening of hypothetical future events * * * and the threat to his position must be actual and genuine and not merely possible or remote.'" *League for Preservation of Civil Rights v. Cincinnati* (1940), 64 Ohio App. 195, 197, quoting Borchard, Declaratory Judgments (1934) 40.

**{¶65}** Byers is seeking declaratory judgment and injunctive relief based upon its argument that appellees have violated the 1912 easement, which we have found to be time-barred. Notwithstanding the alleged violations, however, Byers failed to advance any evidence to establish the controversy at issue is anything more than a "threat" to Byers' rights under the easement. The claims, in light of the language of the easement, are speculative at best. The matter, therefore, is not a justiciable controversy as a matter of law.

**{¶66}** Moreover, even if the matter is justiciable, Byers' awareness of the easement, as well as the 1997 Improvement Project *and* Harvest Rose's intentions to tie into the pipeline since 2008, fail to establish that "speedy relief" would be necessary

19

to preserve its rights.  It alleges no specific, tangible damages in its complaint and a review of the evidentiary materials submitted on summary judgment demonstrates that any excess runoff resulting from the tie-in was either negligible or non-existent. Accordingly, even though the trial court's rationale was flawed, its disposition that the declaratory action cannot be sustained is nevertheless proper.

**{¶67}**  Moreover, "injunctive relief, as an equitable remedy, is appropriate only if the movant demonstrates that immediate and irreparable injury, loss or damage will result without the relief and that no adequate remedy at law exists."  *See, e.g.*, *Jaussen v. Fleming,* 11th Dist. Trumbull No. 93-T-4973, 1995 Ohio App. LEXIS 1998, *4 (May 12, 1995).  "The purpose of an injunction is to prevent a future injury, not to redress past wrongs."  *Lemley v. Stevenson*, 104 Ohio App.3d 126, 136 (1995); *see also State ex rel. Great Lakes College, Inc. v. State Medical Bd.*, 29 Ohio St.2d 198, 280 (1972).

**{¶68}**  To establish a claim for injunctive relief, a plaintiff must show, by clear and convincing evidence: (1) the likelihood of success on the merits; (2) granting the injunction will prevent irreparable harm; (3) the potential injury that may be suffered by the defendant will not outweigh the potential injury suffered by the plaintiff if the injunction is not granted; and (4) the public interest will be served by the granting of the injunction.  *Cleveland v. Cleveland Elec. Illuminating Co.,* 115 Ohio App.3d 1, 12 (8th Dist.1996).

**{¶69}** Here, as discussed above, Byers has failed to allege any specific irreparable harm that will result if the injunctive relief is not granted.  For this reason alone, Byers is not entitled to an injunction in the instant matter.  Accordingly, even though the trial court's justification for granting summary judgment may have been improper, it nevertheless reached the appropriate conclusion.

{¶70} Byers' third and fourth assignments of error lack merit.

{¶71} The judgment of the Portage County Court of Common Pleas is hereby affirmed.

THOMAS R. WRIGHT, J., concurs,

DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion.

_____

DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion.

{¶72} Although I concur in the judgment to affirm the trial court's grant of summary judgment against Byers, I do so for different reasons as to the first and fifth assignments of error.

{¶73} Regarding the first assignment of error, the majority concludes that the 10-year statute of limitations period under R.C. 2305.14 applies since the claim alleged by Byers in Count One of the Complaint was not actually for a breach of contract, evidenced by the fact that no damages were requested. I disagree with the conclusion that this is the applicable statute of limitations period.

{¶74} R.C. 2305.14 applies when there is "[a]n action for relief not provided for in sections 2305.04 to 2305.131 * * * of the Revised Code." This period would apply under the circumstances of the present case only if former R.C. 2305.06 were inapplicable. Pursuant to that statute, "an action upon a specialty or an agreement, contract, or promise in writing" is subject to a 15-year statute of limitations.

{¶75} Count One for "Breach of Contract" raised the issue of whether the Portage County Board of Commissioners complied with the terms of the easement.

21

Courts have found that an easement is a contract and that claims arising from an easement agreement fall under R.C. 2305.06's statute of limitations. *See Smith v. Littrell*, 12th Dist. Preble No. CA2001-02-004, 2001 Ohio App. LEXIS 5627, 5-6 (Dec. 17, 2001) (easement agreement interpreted as a contract); *Hoffman v. Akron*, 9th Dist. Summit No. 12724, 1987 Ohio App. LEXIS 6297, 3 (Apr. 1, 1987) (where the claim arose from an express easement requiring maintenance of the easement by the owner, R.C. 2305.06 applied). If an easement can operate as a contract or an agreement, then the 15-year statute of limitations in former R.C. 2305.06 would apply to claims "upon" such an agreement. While the majority contends that Byers failed to plead damages necessary for a valid breach of contract claim, the statute does not explicitly state that the elements of such a claim must be properly pled to fall under the statute of limitations, just that the claim must be made upon a contract. Byers specifically stated within the complaint under Count One that its claim was based on the Commissioners violating the terms of the easement, i.e., raised a claim upon the contract.

{¶76} Regardless, since the opinion properly concludes that there was no evidence of damages, which Byers essentially conceded at oral argument, it cannot prevail on a breach of contract claim. *Harper v. Miller,* 109 Ohio App. 269, 271, 164 N.E.2d 754 (3rd Dist.1957). To the extent that, within the breach of contract claim, Byers sought relief in the form of a declaratory judgment and an injunction, this relief was requested in separate claims and was properly evaluated under those claims.

{¶77} In the fifth assignment of error, the majority correctly concludes that, since the trial court gave notice to the parties, it was within its discretion to convert the Civ.R. 12(B)(6) motion to dismiss into a motion for summary judgment. Prior to converting such a motion, a trial court must give actual notice to the parties and provide an

opportunity to respond, which occurred here. *State ex rel. Baran v. Fuerst*, 55 Ohio St.3d 94, 97, 563 N.E.2d 713 (1990). While Byers argues that this is unfair and shifts the burden, the law is very clear that this action is permissible. *Id.*; Civ.R. 12(B).

**{¶78}** It is unclear, however, why the majority cites Civ.R. 61's provision regarding harmless error. Since the court followed the proper procedure for converting the motion to dismiss into a motion for summary judgment, by providing notice to the parties, there was no "error or defect in the proceedings." Thus, the implication that harmless error occurred is incorrect and the trial court's procedure for providing notice was proper.

**{¶79}** For the foregoing reasons, I concur in judgment only.